## Potts *et al. versus* Wright *et ux.*

1. Where an administrator in a petition asking for the sale of real estate averred under oath that the decedent had no personal property, and gave a just and true account of all the debts of decedent which had come to his knowledge, the fact that the record did not show that a bond had been filed by the administrator as required by law, did not invalidate the purchaser's title, and the irregularity was cured by the confirmation of the sale by the Orphans' Court.

2. The decree of the Orphans' Court confirming a sale made by an administrator under its order for the payment of debts of a decedent is conclusive evidence that the title of the decedent was legally transferred to the purchaser. A sale thus made is a judicial sale and the title of the purchaser cannot be impeached for fraud unless the evidence thereof be clear and explicit.

3. It is error in the submission of facts to the jury to blend them with questions and conclusions of law, and therefore whether a record showed a valid confirmation of a sale was for the court to decide, and should not have been submitted to the jury.

4. Where testimony consisted of record, documentary and parol evidence, it was error to throw it all into the jury box together and say to the jury it was for them, upon all the evidence, to determine for whom the verdict should be.

5. Where by the return of the sheriff on a writ, corroborated by his own testimony and that of plaintiffs, it was shown that possession of premises was given to plaintiffs, the running of the Statute of Limitations was stopped, and it was error to charge the jury that it was necessary for the purchasers, the plaintiffs, to have put a tenant in possession under them.

6. Where there was no one on the premises when the sheriff went with plaintiffs, with a writ of possession to deliver possession to them, and the sheriff levied on the goods on the premises for costs, and proclaimed that he gave possession to plaintiffs, and they accepted and took possession, the delivery was full and complete, and its validity was not impaired by defendants having returned to the occupancy and continued in possession.

October 27th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.  WILLIAMS, J., absent.

Error to the District Court of *Cambria county:* Of October and November Term 1875, No. 297.

This was an ejectment for 200 acres of land in Cambria county, brought by James Potts and George Bheam against Henry Wright and wife.

The land was a part of a tract in the warrantee name of Joseph Taylor, and to which, about 1825, John Harshberger made claim, who moved thereon with his family, cleared a portion of the land, marked its boundaries, built a log cabin, and continued in possession until the time of his death in 1850.

He left a wife, Nancy, and two daughters, Mary and Betsy. Mary ran off, when quite young, with Isaac Haws, with whom it appeared she lived unhappily up to 1855, when they separated. She had a child, Nancy, who was intermarried with Henry Wright, defendant in this action.

Under said John Harshberger both plaintiffs and defendants claimed to own the land.

[Potts *v.* Wright.]

Harshberger, when he died in 1850, left a will, wherein John Galbreath was named as executor. Galbreath, on the 29th of March 1851, renounced his executorship, and on the same day Nancy Harshberger, the wife of testator, having renounced her right to administer, at her request T. L. Heyer was appointed administrator *cum testamento annexo.*

On the 14th June 1853, the administrator petitioned the Orphans' Court for an order for the sale of the land in dispute, to pay the debts of decedent; the petition, which was under oath, setting forth that an appraisement showed his personal estate was insufficient to pay his debts, and accompanying this petition was a schedule of the debts.

The court ordered the sale, and on the 7th of September following the administrator returned that he had sold the land to James Shannon for $350, which sale the court confirmed. Shannon refused to take the property, and an alias order was made and the land sold for $300, on the 15th December, to L. B. Cohick, which sale was likewise confirmed. Subsequently Cohick refused to take the land, and the court made a pluries order, under which, on the 5th of December 1854, it was sold to the plaintiffs. The administrator executed, acknowledged and delivered a deed to plaintiffs, and made his report to the Orphans' Court, who confirmed the sale on the 5th of June 1854.

It did not appear that a bond was filed by the administrator for the due performance of his duty and for the proper distribution of the fund arising from the sale, or that a mortgage was given at the time of sale by purchasers for part of purchase-money, as required by the order of court, the conditions of the sale being that one-third was to be paid down and the remaining two-thirds in annual payments; but it was in evidence that the whole of the purchase-money was paid to the administrator.

During all these proceedings James Potts, one of the plaintiffs, to whom the land was sold, acted as counsel of the administrator.

At the time this sale was made Isaac Haws, the son-in-law of John Harshberger, was living on the land, having entered before the decease of the latter and remaining there by his sufferance.

Proceedings were instituted in 1856 before two justices, under the Act of April 9th 1849, to recover the land from Haws, who, as appeared by the record of the justices, refused to give possession to plaintiffs. In pursuance of these proceedings a writ of possession issued with an execution for costs, and the sheriff went to the premises, and finding no one there made proclamation and levied on some chattels he found in the house. He returned the next day and found Mary Haws in possession, and he then gave plaintiffs, who were with him, possession of the land, and took away the chattels for sale for costs.

[Potts *v.* Wright.]

It appeared that plaintiffs paid the taxes after the sale on the land and exercised other acts of ownership.

It appeared also that Mary Haws had lived on the land for short periods from about 1850 to 1873, one period of absence extending over ten years; that she had authorized her sister Betsy, who lived on an adjoining tract, to have a care over this land, and that Wright, her son-in-law, occupied the premises by her authority.

Wright's only occupancy was a short time in 1860, and his occu-.pancy which commenced in 1874, and to dispossess him of which this .suit was brought.

The contention of the defendants was that there was collusion and fraud practised in the sale and purchase of the land by the administrator and the purchasers; that the defendants, or those under whom they claimed, had held adverse possession of the premises for over twenty-one years previous to the issue of the writ of ejectment, and that the Orphans' Court had no jurisdiction to decree an alias or pluries order of sale until the confirmation of the previous sales was set aside.

On the trial plaintiffs submitted the following points, accompanying which are the answers of the court:—

1st. The court is requested to instruct the jury that the title of the plaintiffs, in evidence, being derived from the sale of the premises by an order of the Orphans' Court, upon the petition of the administrator of John Harshberger, deceased, for the payment of his debts, the sale so made and confirmed by the court, the money paid by the plaintiffs, and a deed therefor executed and delivered by the administrator to the plaintiffs, and possession of the same obtained by the plaintiffs in pursuance of law, divested all the title and possession that was in John Harshberger, and his heirs claiming under him, and vested the same in the plaintiffs; and that the defendants, admitting themselves to hold their alleged title from the heirs of John Harshberger, deceased, cannot controvert the title of the plaintiffs in this collateral proceeding, and the verdict must, therefore, be for the plaintiffs.

Answer: "Upon this point we instruct that if no fraud or collusion is shown between Heyer, the administrator, and the plaintiffs in this case in the sale or purchase of this land, and the jury believe, under all the evidence, that there was such delivery to and possession by the plaintiffs as is contemplated by the law, we affirm this point. And this is a matter for you to determine upon the testimony."

This answer was the sixth assignment of error.

2d. That the plaintiffs having been put in possession of the premises by the sheriff of Cambria county, on the 21st of July 1856, on a writ of possession issued by two justices of the peace, by virtue of certain proceedings had by them and a jury, in which Potts and Bheam were plaintiffs, and Isaac Haws (husband of Mary Haws, one of the heirs of John Harshberger, deceased, and under

[Potts *v.* Wright.]

whom defendants claim title), then in possession, was defendant, which proceedings were had under the provisions of the Act of 9th of April 1849, the plaintiffs thereby acquired the actual possession of the same as against the heirs of John Harshberger, and all persons claiming under them; and the alleged adverse possession of the defendants, under the heirs of John Harshberger, deceased, must, therefore, date from the delivery of the premises by the sheriff, as aforesaid, to the plaintiffs, under the proceedings aforesaid, and that twenty years not having elapsed from that time until the bringing of this suit, there is no adverse possession in the defendants to defeat the plaintiffs' title.

Answer : " We affirm this point, with this exception. If the jury believe, from all the evidence, that there was such delivery of possession by the sheriff, on the 21st of July 1856, under the proceedings of said justices of the peace, and if the proceedings were regular, and in accordance with the Act of Assembly, we affirm this point. You have heard the testimony in regard to this. There must be three days' notice, including the day of service and excluding the day of trial. It seems to be pretty well shown that there was such service."

This answer was the seventh assignment of error.

4th. That to give title by adverse possession, the possession must be for twenty-one years; that such possession must be actual, visible, exclusive and notorious ; that it must also be continuous and uninterrupted; that from all the evidence in the case the defendants, or those under whom they claim, have not been in such possession, either by actual residence on the same, or cultivation thereof for twenty-one years before the bringing of this suit, as would defeat the plaintiff's title.

Answer : " We affirm the first proposition in this point, that to give title by adverse possession, the possession must be adverse for twenty-one years, and we leave it to the jury, upon the evidence, to say whether or not the defendants, or those under whom they claim, have held such possession."

This answer was the eighth assignment of error.

5th. That the Orphans' Court of Cambria county, under the proceedings and decrees of which the plaintiffs derive title, is a court of record, with all the incidents of a court of record at common law; that its proceedings and decrees in all matters where it has jurisdiction, cannot be reversed or avoided collaterally in this court or any other court, and are only liable to the usual modifications or alterations, on an appeal to the Supreme Court ; that the order of said court for the sale of the premises in suit, being for the payment of debts of John Harshberger, the decedent, was clearly within the jurisdiction of said Orphans' Court ; and that the proceedings of said court on said petition and order of sale, cannot be controverted by this court or jury in this collateral proceeding

[Potts *v.* Wright.]

by the heirs of John Harshberger, or the defendants claiming under them.

Answer: " In the absence of fraud or collusion between the administrator and the plaintiffs, we affirm this point.    But we say that fraud will make void any contract, no matter what the decree of the court may have been."

This answer was the ninth assignment of error.

6th. That the defendants, by an abstract of title filed in this case, claiming title under the will of John Harshberger, deceased, through Mary and Elizabeth, his daughters, are not at liberty to hold or claim adverse to that title in this suit; that the title of the said John Harshberger, being divested by the sale of his administrator, to the plaintiffs under an order of the Orphans' Court, the plaintiffs by virtue of the proceedings in said Orphans' Court, the payment of the purchase-money, and the delivery of the deed to them, have all the title John Harshberger had in his lifetime, and his heirs, under his will, to the premises aforesaid.

Answer: " We affirm this point, if there has been no fraud or collusion shown in this case."

This answer was the tenth assignment of error.

11th. That it is too late after sale under an order of the Orphans' Court, confirmation of the sale, money paid, and deed delivered, to object to the sale.

Answer : " If the sale has been in accordance with the orders and decrees of the court, and no fraud or collusion shown, we affirm this point."

This answer was the eleventh assignment of error.

12th. Under all the evidence in this case, the verdict of the jury must be for the plaintiffs.

Answer : " We refuse so to instruct you, but leave it to you to determine whether or not, upon all the evidence, the verdict should be for the plaintiffs or the defendants in the case."

This answer was the twelfth assignment of error.

Defendants submitted the following points :—

6th. That if the jury find, under all the evidence, that Mary Harshberger was not, in fact, dispossessed by the sheriff, and no tenant was put in possession under and by virtue of the sheriff's writ for the plaintiffs, or by the plaintiffs themselves, then there was nothing to interrupt the running of the Statute of Limitations, and their verdict should be for the defendants.

Answer : " We affirm this point, and leave it to the jury to determine if such possession was given to the plaintiffs by the sheriff."

This answer was the thirteenth assignment of error.

9th. If the jury believe, from all the evidence, that there was any fraud, legal or actual, on the part of the administrator afore-

[Potts *v.* Wright.]

said and James Potts, in selling this land, or procuring it to be sold, then the verdict should be for the defendants.

Answer: " We instruct you, that if the testimony satisfies you that there was fraud and collusion in the sale and purchase of this land by the administrator and James Potts, it avoids the sale and renders the contract null and void. It is a question for you to determine."

This answer was the fourteenth assignment of error.

The following are portions of the charge; those in brackets constituted, in the order they are marked, the first, second, third, fourth, fifth and fifteenth assignments of error:—

" It is claimed here, on the part of the plaintiffs, that the return of the administrator was confirmed by the court, and that the title to this land is vested in them, in compliance with the confirmation of the sale to the purchasers. [Now this would give the plaintiffs here a good title to the land, if there is nothing disclosed in the evidence before you which satisfies you that there are such irregularities or fraud in the making of this sale to these parties as would avoid it. The question will be for you to determine upon the testimony.]

" The plaintiffs in this case claim that the irregularity spoken of here by the defendants, in the petitions and orders presented to and granted by the court, is not a matter to be inquired into by this court, the remedy being an appeal to the Supreme Court.

" Upon that point we will instruct you when we come to charge you on the points submitted to the court by counsel. It is claimed on part of the defence, that Judge Potts was the counsel for the administrator, and of this estate. [It is also claimed on part of the defence here, for the purpose of showing fraud in this transaction, that the settlement of this estate was not done in such a manner as was required by law, and, therefore, they infer that it was a fraudulent transaction on the part of Heyer, the administrator, and these purchasers. You will determine that question.] They claim [that after Heyer was appointed no inventory was made of the personal effects of the deceased.] The Act of Assembly requires that within thirty days the administrator shall go upon the premises and make an appraisement, by at least two suitable persons, under oath, of all the personal effects or estate of the deceased, taking into account any notes, bonds, book accounts, money, or anything of this kind that may belong to or may be coming to the decedent's estate, and also to give notice to all creditors to present their claims, duly probated or sworn to, for settlement. [They claim that this was not done, and that this is an element in this case to show fraud. You have heard the testimony of the register and recorder in this respect; and he testifies to you that there was no account filed, no inventory, nothing in the

[Potts *v.* Wright.]

papers or on record showing that an inventory was ever filed in this estate.]

["The defence claims further that the administrator acted wrongly in exposing any of this real estate to sale, for the reason that it was not necessary; that Mr. Harshberger, the decedent, in his will designed and intended that there should be none of the real estate sold; that he contemplated that there was sufficient upon the premises to satisfy what debts he owed, and pay his funeral expenses; that this is set forth in the will, and argues that this is an element to prove that the estate was not settled as it should have been, and consequently there was collusion and fraud between the purchasers and the administrator at this sale. They further claim that Judge Potts was the attorney for the estate and for the administrator, and it became him, as attorney, to see that the estate was properly administered, as much so as it was the duty of the administrator. They say that there was no necessity for selling this land to pay these debts; that all the debts shown amount to only one hundred and six or one hundred and sixteen dollars, and that they could have been, by a proper administration of this estate, paid without selling this property. This is a question for you, under all the evidence that is offered, both on the part of the defence to prove fraud and collusion, and on part of the purchasers, and you must determine whether it amounted to sufficient in your judgment to enable you to say there was fraud. They also claim that there was no bond filed by the administrator for the due performance of his duty and the proper distribution of the money arising from the sale of this land, and that there was no mortgage placed on record for the purchase-money of this tract of land. You recollect the testimony of Bheam and Potts, the plaintiffs, that they have paid the purchase-money. The defendants claim that the position of Mr. Potts in regard to this estate, and the manner in which it was settled, are elements showing fraud in the case, and it is for you to determine whether it existed or not. It is not denied that Potts was counsel for Heyer, the administrator; but he denies that he was counsel for the heirs. You will determine that question from the testimony. If he was but counsel for the administrator, it was part of his duty, at least, to use the estate properly.]

"The counsel for the defence calls the attention of the court to the acknowledgment of the deed. They contend that the acknowledgment before Esquire Mitchell was taken the same day that the order confirming the sale was made, and that the two could not have been done at the same time, and that the court never confirmed the deed, neither was it acknowledged in open court. The only confirmation or acknowledgment on this deed consists in the words 'By the court,' and they are in print, and would appear to have been done by the printer at the time the deed was printed. [It is for you to say whether this deed was presented to the court for con-

[Potts v. Wright.]

firmation and acknowledgment, and, if so, whether or not the court adopted these printed words as its acknowledgment. It is not the usual way that judges confirm or acknowledge deeds."]

The verdict was for the defendants. The plaintiffs took this writ, and the errors assigned were those heretofore designated.

*John P. Linton*, for plaintiffs in error.—Irregularities in the proceedings of the Orphans' Court will not defeat the title of a purchaser of a sale made by its order, and a decree confirming the same cannot be inquired into in this collateral proceeding: M'Pherson v. Cunliff, 11 S. & R. 431; Klingensmith v. Bean, 2 Watts 486; Painter v. Henderson, 7 Barr 48. It was error to instruct the jury that it was for them to determine whether there were such irregularities or fraud in making the sale as would avoid the same. Questions of law cannot be submitted to the jury: Commonwealth v. Henderson, 1 Penrose & Watts 401; Stouffer v. Latshaw, 2 Watts 165; Haines v. Stouffer, 10 Barr 363. It was the duty of the court to instruct the jury as to what constituted fraud, and for them to ascertain whether from the evidence it existed. To set aside a proceeding in the Orphans' Court, twenty years after the sale in a collateral proceeding, on the ground of fraud, the evidence must be clear, precise and indubitable: Stine v. Sherk, 1 W. & S. 195. The sale was a judicial sale, and the purchaser took the same title as the decedent had. The regularity of the proceedings before the justices could not be determined by the jury, and should not have been submitted to them. It was error to leave to the jury to say whether there was legal or actual fraud on the part of the administrator and Potts in the purchase of the land.

*D. McLaughlin*, for defendants in error.—Decree of Orphans' Court may be impeached collaterally for fraud or want of jurisdiction: Merklein v. Trapnell et al., 10 Casey 46; Gilmore v. Rodgers et al., 5 Wright 127; Rorer on Judicial Sales 170–174. Parties acting in a fiduciary capacity cannot purchase at sales made by themselves or by their direction: Note to 4 Kent 438; Story on Agency 11, 12; Rorer on Judicial Sales 50; Fox v. Mackreth and Pitt v. Mackreth, Lead. Cas. Eq., Hare and Wallace's notes 125. The proceedings before the justices were invalid, as Mary Haws was not made a party: Tyler on Ejectment 529. The writ of possession was not fully executed: Id. 590; Herman on Executions 533. Plaintiffs were never put in actual possession of land: Id. 534. Continuous possession for twenty-one years and exercise of acts of ownership will alone defeat right of owner of land: Urket v. Coryell, 1 W. & S. 83. Legal owner need not continue all the time in possession: Tyler on Ejectment 100.

Mr. Justice MERCUR delivered the opinion of the court, January 2d 1877.

[Potts *v.* Wright.]

Both parties claimed under John Harshberger, who died testate. in September 1850. The will was duly proved before the register in April 1851. The executor having renounced, an administrator with the will annexed was duly appointed. On his application the Orphans' Court ordered the sale of the land in question for the payment of debts. It was sold to the plaintiffs on the 5th of June 1854. The sale was confirmed by the court. The purchase-money was paid by the purchasers, and the deed was acknowledged and delivered by the administrator to them. One Isaac Haws, who was either married to a daughter of Harshberger or lived with her as her husband, went on the premises a short time before the death of Harshberger, and by his sufferance. He continued in possession. In July 1856 the plaintiffs as purchasers instituted proceedings against him before two justices of the peace to obtain possession, under the Act of 9th April 1849. The jury found all the facts required by the statute, and the justices adjudged the possession to the plaintiffs on the 18th July 1856. On the same day a writ of possession issued to the sheriff, who returned, on the 21st of July 1856, that he had given possession of the premises to the plaintiffs. The present action of ejectment was commenced on the 15th June 1874.

The numerous assignments of error involve the consideration of two questions ; one the validity of the title acquired by the plaintiffs at the administrator's sale ; the other the defendant's rights under the Statute of Limitations.

1. In the petition of the administrator asking for the sale, he averred under oath that the decedent had no personal property to appraise so far as he could find ; and he gave a just and true account of all the debts of the decedent which had come to his knowledge. It is true the record does not show the filing of a bond as directed by the Act of Assembly ; but the purchaser's title is not invalidated thereby : Lockhart *v.* John, 7 Barr 137. It was but an irregularity cured by the confirmation of the sale.

The Orphans' Court is a court of record. It has all the incidents and qualities of a court of record at common law. Its proceedings and decrees, in all matters within its jurisdiction, cannot be reversed or avoided collaterally in any other court : 2 Purd. Dig. 1103, pl. 4. Its judgments and decrees like those of any other court of record are final and conclusive. They cannot be questioned in a collateral suit unless for want of jurisdiction appearing on the record, or for fraud : Kennedy *v.* Wachsmuth, 12 S. & R. 171 ; The President of the Orphans' Court of Dauphin County *v.* Groff *et al.*, 14 Id. 181 ; Lockhart *v.* John, *supra ;* Merklein *v.* Trapnell *et al.*, 10 Casey 42 ; Gilmore *v.* Rodgers *et al.*, 5 Wright 120.

The petition shows debts of the decedent and no personal estate with which they could be paid. It was a substantial compliance with the requirements of the statute. The court accepted it as a

[Potts v. Wright.]

full compliance. It gave to the court jurisdiction of the subject-matter, and authorized a sale for the payment of debts. The sale was ordered. It was made, and confirmed by the court. Jurisdiction is thus shown by the record, and all irregularities are cured. The purchase-money was paid and the deed delivered.

. It is true some of the earlier cases, prior to the Act of 1834, held the title which a purchaser acquired at an Orphans' Court sale might be questioned in ejectment; yet the later cases hold it cannot be done except for fraud or want of jurisdiction : M'Pherson v. Cunliff et al., 11 S. & R. 422; Painter v. Henderson, 7 Barr 48. A sale under the order of an Orphans' Court is a judicial sale : Moore v. Schultz, 1 Harris 98; Vandever v. Baker, Id. 121. It may nevertheless be impeached for fraud ; but the evidence of the fraud must be clear and explicit. It cannot be established by showing some irregularities, and then making a general allegation of fraud. The irregularities were cured, and distinct acts of fraud must be proved to affect the title of the purchaser. This is not an attempt to set aside a sale, in the court which ordered it, before confirmation ; but to impeach it collaterally in another court twenty years thereafter, and after the purchasers had been put in possession by legal process.

We have carefully examined the testimony in this case. We cannot find any evidence of fraudulent conduct on the part of the purchasers. The allegation rests mainly on the fact that one of the plaintiffs was counsel for the administrator, and prepared the writings connected with the sale. In the absence of any proof showing notice of some specific fraudulent conduct of the administrator, it would be a harsh rule to charge the counsel with implied notice. We however see no evidence of fraudulent conduct of the administrator in making the sale. Neither the fact that he sold it the third time before he found a purchaser who would comply with his bid, nor the other fact that the deed is dated on the day the sale was confirmed, creates any presumption of fraud. The case is barren of any facts to submit to the jury to find fraud in the purchase of the plaintiffs : Howard Express Co. v. Wile, 14 P. F. Smith 201; Phila. & Reading Railroad Co. v. Yerger, 23 Id. 121. The decree therefore of the Orphans' Court confirming a sale made under its order for the payment of debts is conclusive evidence that the title of the decedent was legally transferred to the purchasers : Iddings v. Cairns et al., 2 Grant 88. The learned judge was not sufficiently careful to submit facts only to the jury. He inadvertently blended them with questions of law and conclusions of law. As a whole the general effect of the charge was calculated to mislead the jury as to their power and duties. Thus, in the second assignment, they were told to determine the question whether the settlement of the estate was done "in such a manner as was required by law." In the sixth it was left to them to

[Potts *v.* Wright.]

determine whether "there was such a delivery to and possession by the plaintiffs as is contemplated by law." In the seventh it was left to them to find whether "the proceedings were regular and in accordance with the Act of Assembly." In the point covered by the fourth assignment, the defendants requested the court to charge the jury if there was any fraud, legal or actual, their verdict should be for the defendants. In answer to this, and ignoring all distinction between legal or actual fraud, or indicating what constituted either, the court said, "If the testimony satisfies you that there was fraud and collusion in the sale and purchase of this land by the administrator and James Potts, it avoids the sale and renders the contract null and void. It is a question for you to determine."

The court did not·instruct the jury what duty any Act of Assembly or any law imposed on the administrator. They were not informed by the court what acts were necessary to make the sale legal, nor what would make it illegal. They were told what acts and conduct the defendants alleged were fraudulent, and then the court submitted to them to say whether those acts constituted fraud. They were not informed whether they were evidence of actual or legal fraud, or what constituted either. Whether the record showed a valid confirmation of the sale was for the court to decide. It was error to submit it to the jury. The testimony consisted of record, documentary, and parol evidence. It was manifest error to throw it all into the jury-box together, and say, as in the twelfth assignment, it was for them "to determine whether or not, upon all the evidence, the verdict be for the plaintiffs or the defendants."

2. If possession of the premises was given to the plaintiffs as shown by the sheriff's return on the writ, and corroborated by the testimony of the sheriff and the plaintiffs, it stopped the running of the statute; and it was error to charge substantially that it was necessary for the purchasers to have put a tenant in possession under them. If no person was in the house when the sheriff went with the plaintiffs to deliver possession to them, and the sheriff removed the goods from the house; if he then and there proclaimed that he gave them possession of the premises, and they accepted the same and took possession, the delivery was full and complete. Its validity was not impaired by the defendants having returned to the occupancy of the house on the day following and continuing in the possession thereof. Hence, if the defendants claimed under the will of John Harshberger, they could not have acquired title under the Statute of Limitations.

As an abstract proposition, we cannot say there is error in the answer covered by the eleventh assignment. The plaintiffs' fourth point assumes certain facts to exist, which are for the jury to pass upon. So we are unable to say there is positive error covered by the eighth assignment. The other assignments are substantially sustained, and the judgment must be reversed.

Judgment reversed, and a *venire facias de novo* awarded.