Daniel Smith, Sylvanus K. Smith, John J. Smith, Cassa Jane Rees, Robert H. Burge and Lida Florence Burge, Franklin Burge and Nettie May Burge, by their Father and Next Friend, Robert H. Burge, Appellants, *v.* William Wildman.

*Orphans' court—Jurisdiction—Nullity of decree.*

A decree of the orphans' court is a nullity if pronounced upon a subject over which the court has no jurisdiction.

*Decedent's estate—Decedent's debts—Sale of real estate—Caveat emptor—Jurisdiction of orphans' court—Decree questioned collaterally.*

Where the lien of the debts of a decedent upon real estate has expired by the limitation of time prescribed by the statute, the orphans' court has no jurisdiction to direct the executor or administrator to sell the real estate for the payment of such debts.

The rule of caveat emptor applies to orphans' court as to other judicial sales, and disappointment in title is not ordinarily ground for relief.   The purchasers at an orphans' court sale are bound to see that the proceedings are sufficiently regular to authorize the sale.

An unauthorized decree of an orphans' court for the sale of lands will not stand until reversed in a regular course of appeal, but may be questioned in a collateral suit by or against a person claiming under the decree, whether the want of jurisdiction appears affirmatively on the record or not.

An administrator ten years after the death of decedent, petitioned the orphans' court for permission to sell real estate to pay the decedent's debt which was unsecured.   The petition set forth the debt to be paid, but did not state the date of decedent's death, nor did it appear from the petition itself that the lien of decedent's debts on the real estate had expired as provided by sec. 13 of the act of February 24, 1834, P. L. 75.   The court made the order of sale, and the real estate was sold by the administrator.   Several years afterward the heirs of the decedent brought an action of eject-ment against the persons in possession of the land claiming title under the orphans' court sale.   *Held,* that the plaintiffs were entitled to recover.

In proceedings in the orphans' court to sell real estate for the payment of a decedent's debts, the court should be satisfied before making an order for the sale of real estate that there are unpaid debts properly chargeable upon the real estate of the decedent, that the real estate described in the petition is bound by the lien of the said debts, and that it is necessary to have recourse to the land to enable the administrator or executor to pay them.

STERRETT, C. J., and MITCHELL and FELL, JJ., dissented in this case on the ground that the petition contained sufficient jurisdictional aver-ments, and that the decree of the orphans' court ordering the sale was con-clusive against the heirs at law.

Argued Oct. 6, 1896.   Appeal, No. 53, Oct. Term, 1896, by plaintiffs, from judgment of C. P. Greene County, April Term, 1892, No. 128, on verdict for defendant.   Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.   STERRETT, C. J., MITCHELL and FELL, JJ., dissent.

Ejectment for a tract of land in Springhill township.

At the trial it appeared that plaintiffs claimed title as heirs of James Smith, deceased.   The defendant claimed title under a decree of the orphans' court authorizing the sale of the land for the payments of the debts of James Smith, deceased.   The petition for the order of sale, with affidavit attached, was as follows:

The petition of William Smith, administrator upon the estate of James Smith, late of Springhill township, deceased, respect-fully showeth: That the said James Smith died intestate, seized of an interest in and to the following real estate, towit: a cer-tain tract of land in Springhill township, aforesaid, adjoining William Dewberry, William Wildman, Isaac Jobs and Samuel

Boler, containing one hundred acres, more or less; that there was no personal estate to pay debts, and it is requisite to sell said real estate to pay said debts; that your petitioner has annexed a true and perfect inventory and full account of all the assets as well as debts of said decedent which have come to his knowledge.

He therefore prays your Honors to grant an order of said court to authorize him to sell the real estate above described to pay debts.

Assets: Personalty, nothing.

Debts, Rebecca Jane Lippencott:

| | |
|---|---|
| Amount paid by her on parol contract for decedent | $702.74 |
| Interest on same, 11 years　.　.　.　.　. | 463.76 |
| | $1,166.50 |

June 10, 1872, granted. Terms, cash on confirmation of sale.

Other facts appear by the opinion of the Supreme Court.
The court gave binding instructions for the defendant.
Verdict and judgment for defendant. Plaintiffs appealed.

*Error assigned* among others was above instruction.

*F. P. Iams*, with him *J. W. Ray, H. B. Axtell* and *C. C. Brock*, for appellants.—The orphans' court had no jurisdiction to order the sale: Maus v. Hummel, 11 Pa. 228; Oliver's App., 101 Pa. 299; Bindley's App., 69 Pa. 295; Pry's App., 8 Watts, 253.

If the orphans' court was without jurisdiction of the subject-matter its decrees may be reversed and avoided collaterally in any other court: Torrance v. Torrance, 53 Pa. 505; Elliott v. Piersol, 1 Pet. 340; McPherson v. Cunliff, 11 S. & R. 422; Painter v. Henderson, 7 Pa. 52; Lockhart v. John, 7 Pa. 139; Keech v. Rinehart, 10 Pa. 242; McKee v. McKee, 14 Pa. 231; Grier's App., 101 Pa. 412.

*James E. Sayers*, with him *W. A. Hook*, for appellee.—The judgments and decrees of the orphans' court like those of any other court of record are final and conclusive. They cannot be questioned in a collateral suit unless for want of jurisdiction appearing on the record, or for fraud: Act of March 29, 1832, P. L. 198; McPherson v. Cunliff, 11 S. & R. 422; Hazelett v.

Ford, 10 W. 101; Painter v. Henderson, 7 Pa. 48; Lockhart v. John, 7 Pa. 137; Potts v. Wright, 82 Pa. 506.

The schedule of debts is not a part of the record, it need only be exhibited to the court and not filed. Filing is the better practice : Stiver's App., 56 Pa. 9.

Upon a petition of an administrator for an order to sell realty to pay debts, the existence of the debts may be presumed : Torrance v. Torrance, 53 Pa. 505; Sager v. Mead, 171 Pa. 361.

The proceeding is one in rem and condemns the estate as to the title of the decedent, even as to liens : Yaple v. Titus, 41 Pa. 203.

No notice was necessary excepting that required by statute : Act of March 29, 1832, P. L. 208; Wall's App., 31 Pa. 62.


OPINION BY MR. JUSTICE WILLIAMS, November 9, 1896 :

The question whether under all the circumstances surrounding the parties to this action it is, or is not, conscionable on the part of the plaintiffs is not now before us. The evidence inclines us to think that the circumstances while not amounting to an estoppel at law, are entitled to consideration in foro conscientiæ. But the assignments of error present only a dry question of law to us. Was the orphans' court sale of the real estate now in controversy, made in October, 1872, operative to pass a title to the purchaser? This must depend upon whether the orphans' court had jurisdiction over the land to order its sale, and upon the legal effect of the order and of the decree of confirmation.

Smith died in the spring of 1862 leaving to survive him a wife and five children. He was at the time of his death the owner of the farm which is the subject of this action. No administrator was appointed. His sister, Mrs. Lippencott, had lent him money to the extent of $500 or thereabouts which he had paid upon the land when he obtained his deed. For this money no security was given by him. He had not repaid it at the time of his death, and the widow and such of the children as were of age made some arrangement with Mrs. Lippencott under which she took the farm in payment of her debt. When she came to sell it the purchaser objected to the title for the reason that two of the five children were still minors and their title had not been secured. To remedy this defect in the title and

for no other purpose an administrator upon the estate of Smith was appointed in 1872, ten years after his death, and an application at once made for leave to sell the farm at administrator's sale for the payment of the debt which had been due to Mrs. Lippencott.   The land had been relieved from liability for this debt at the end of five years after the death of the decedent by the operation of the act of February 24, 1834.   The debt had been barred by the statute of limitations at about the same time; but without any inquiry as to the time of Smith's death or the time when the alleged debt was contracted an order of sale was granted, a sale was made by the administrator to Mrs. Lippencott's husband, the price applied upon her debt, and the sale duly confirmed by the orphans' court.   The defendant holds under this sale and is in actual possession.   The plaintiffs bring this action as heirs at law of Smith, their father, and claim to have title by descent, and the operation of the act of 1834.   The defendant replies the orphans' court sale and the conclusive character of the decrees of that court under which the sale was made and confirmed.   The learned judge of the court below took the defendant's view of the case and held the decree of the orphans' court to be conclusive not only of the regularity of the proceedings, and the power of the administrator to sell and make a deed, but also of all claim by the plaintiffs upon the land.

In support of this doctrine the defendant cites Sager v. Mead, 171 Pa. 349, and kindred cases, in which this court has declined to investigate the regularity of the preliminary proceedings, after an administrator's sale has been actually made under an order of the orphans' court, been regularly returned to the court and approved by it.   The leading case upon this subject is McPherson v. Cunliff, 11 S. & R. 422.   In that case the administrators were appointed soon after the death of the decedent in 1795, the sales complained of were made in the same year and in 1796, for the payment of debts and the support of minor children.   Some minor irregularities in the proceedings were alleged, but the chief objection made to the sale was that decedent had a living wife in Ireland at the time of his marriage to the mother of his children in this country of which nothing had been known when the sales were ordered and confirmed.   This court held in an elaborate opinion by Justice DUNCAN that the

title taken by the purchaser was the title of the decedent, and that the court had jurisdiction over the subject-matter and its decrees were therefore conclusive upon the subject covered by them. The reason for so holding he stated in these words: " The principle on which I hold the sentence or decree of the orphans' court conclusive is, that it is a general rule of our law that when any matter belongs to the jurisdiction of one court so peculiarly that other courts can only take cognizance of the same subject incidentally and indirectly, the latter are bound by the sentence of the former and must give credit to it."

This makes the conclusiveness of the judgment or decree depend upon the jurisdiction of the court pronouncing it; and the converse of this proposition is equally clear that a decree of any court is a nullity which is pronounced upon a subject over which the court has no jurisdiction. This is elementary law. It was no new doctrine announced by this court in Torrance v. Torrance, 53 Pa. 505, when we said " want of jurisdiction in the orphans' court is as fatal to its proceedings as to those of any other court." It is not indispensably necessary that the want of jurisdiction should appear affirmatively on the record. Ignorance of the law excuses no man. If an orphans' court should entertain a petition in divorce, hear the testimony and make a decree, the whole proceeding would be a nullity for want of jurisdiction, but it would be necessary to go behind the record and consult the statutes before the want of jurisdiction would appear. In Torrance v. Torrance, supra, the executor presented his petition to the orphans' court for leave to sell real estate for the repayment to himself of money paid to a legatee, and for the payment to another legatee of a judgment recovered by him against the executor for a balance due him upon his legacy. The legacies had been charged by the will of the testator on certain real estate. The court without inquiry directed the sale, and subsequently made a decree of confirmation, and the deed was delivered. But in an action of ejectment we held the sale to be void. The court had under the will no jurisdiction over the land, and therefore its decree was without conclusiveness and void. None of the facts that avoided the sale appeared on the record except the fact that the sale was sought in order to pay legacies. The terms of the will and the want of statutory power to sell for such a purpose had to be sought

outside the files of the court and the recitals upon its dockets How does this doctrine apply to the case now before us? The statute gives the orphans' court power to authorize the administrator to make a sale of the real estate of a decedent in order to pay debts that cannot be paid out of the personal property. The administrator has no power over the land by virtue of his office. The land is made assets in his hands only when this becomes necessary for the payment of debts, and he must go to the orphans' court for leave to sell. He must satisfy that court that there are unpaid debts that are properly chargeable, under the law, to the land because the personal estate is insufficient to pay, and the court thereupon authorizes him to make the sale. If there are no debts he cannot sell, nor can the court give him power to sell unless it be for some other statutory reason. The existence of debts is a jurisdictional fact. In this case the debt was not secured by lien, and under the act of 1834 it had ceased to be chargeable to the land, but that had passed to the heirs at law absolutely free and discharged from it. It was not in the power of the administrator, or of the court, or of both together, to defeat the positive provisions of the act of 1834, or to fasten upon that land that had descended to the heirs this debt which for more than five years had ceased to be a charge upon it.

This has been so often held by this court that it ought to be no longer debatable. In Penn v. Hamilton, 2 Watts, 53, it was held that although the debt might have been reduced to judgment against the administrators yet if not regularly revived "the lien is lost, whether the land be in possession of devisees or purchasers from devisees," after the lapse of five years. In Quigley v. Beatty, 4 Watts, 13, the single point ruled is stated in these words: "The debt of a decedent does not remain on his estate in the hands of an heir longer than seven (now five) years." The statute was characterized in Kerper v. Hoch, 1 Watts, 9, as a statute of repose, and the lapse of time fixed as operating to discharge the land from the debts of the decedent, whether in the hands of purchasers, heirs or devisees. The last case was cited with approval in Hemphill v. Carpenter, 6 Watts, 22, and it was there further held that knowledge of the debts by the heir, or even a promise by the heir that the debt shall remain binding on the land, would not change the rule or

relieve against the statute. See also Loomis's Appeal, 29 Pa. 237; Kessler's Appeal, 32 Pa. 390; Foster's Appeal, 82 Pa. 495; Buehler v. Buffington, 43 Pa. 278. Such debts will not justify an order for the sale of real estate for payment of debts : Pry's Appeal, 8 Watts, 258. The same rule is stated in Bindley's Appeal, 69 Pa. 295, with the further proposition, that previous orders of sale within five years of the death of the decedent would not extend the lien of his debts beyond the period fixed by the act of 1834; and it was also held that "The principal intention of the 24th section of the act of 1834 was to promote security in titles in heirs, devisees and purchasers. No admission however solemn will dispense with an action." The effect of a sale for payment of debts made after the five years had expired under an order that was granted before the end of the five years was suggested but not decided in Craig's Appeal, 5 W. N. C. 243, and Bowker's Estate, 6 W. N. C. 254. A sale under an order of the orphans' court passes only the decedent's title : Kline's Appeal, 39 Pa. 463; Bickley v. Biddle, 33 Pa. 276. The rule applicable to all judicial sales is caveat emptor as to the title acquired. It has been distinctly held that the rule applies to orphans' court sales and that disappointment in the title is no ground for relief : Bashore v. Whistler, 3 Watts, 490; Bickley v. Biddle, 33 Pa. 276; Vandever v. Baker, 13 Pa. 121. The purchaser at an orphans' court sale is also bound to see that the proceedings are sufficiently regular to authorize the sale : Larrimer v. Irwin, cited in 4 Binn. 104. But all mere irregularities are cured by the decree of confirmation, which is an adjudication that the sale was made under the authority of the court: Potts v. Wright, 82 Pa. 498. But want of authority cannot be cured. Thus the confirmation of a sale ordered to pay legacies was held to be void for want of power to order the sale : Torrance v. Torrance, supra. The law does not authorize any such proceeding. An unauthorized decree of an orphans' court for the sale of lands will not stand until reversed in a regular course of appeal, but may be questioned in a collateral suit by or against a person claiming under that decree: Messinger v. Kintner, 4 Binn. 97; Snyder v. Snyder, 6 Binn. 483; Sager v. Mead, 164 Pa. 125.

The plaintiffs have shown a title derived by descent from the decedent, which had been relieved from his debts under the act

of 1834 for more than five years. This was a title that the orphans' court had no power to take from them. They were the holders of an independent, and as to these creditors, an adverse title to the land, and stand in the same position so far as the right to deny the jurisdiction of the orphans' court over their title as would any other adverse claimant. The order of sale operated only on the land of the decedent; not on that of any other person. It is because the land is a part of the estate, and is liable for his debts, that the court is empowered to order a sale. When it is discharged from the debts by a positive statute, the orphans' court cannot subject it again to liability. The heirs as the holders of a perfect title free from liability to all unpaid debts of their ancestor are as we have said adverse claimants to the land. Their title is therefore beyond the power of the court, and they may assert it against the holder of the administrator's deed in any court in which its validity may be called in question. In conclusion it is proper to say that the proceedings of the orphans' court in this case ought not to be followed. The court should be satisfied, before making an order for the sale of real estate, that there are unpaid debts properly chargeable upon the real estate of the decedent. That the real estate described in the petition is bound by the lien of the said debts; and that it is necessary to have recourse to the land to enable the administrator or executor to pay them. The most convenient way for presenting these facts to the court is to embody them in the petition, stating the date of the decedent's death, and whether the debts were at that time secured by mortgage or judgment. This practice would make such a blunder as was committed in this case impossible; it would make the duty of the purchaser easier of performance; and tend to the security and repose of titles in heirs and devisees as well as purchasers.

The judgment is now reversed and a venire facias de novo awarded.

Dissenting opinion by MR. CHIEF JUSTICE STERRETT, JUSTICES MITCHELL and FELL concurring:

The real question which underlies this case is whether a purchaser is bound to look beyond the jurisdictional averments expressly prescribed by the act of 1832 under which orphans'

court sales are made.   The facts set forth in the petition in this case are precisely those upon which the orphans' court is empowered " to authorize sales of decedents' real estate for payment of debts."   If this be sufficient the sale made was within the jurisdiction of the court which made the decree, and collateral attack on the title thereunder is by the express terms of the act prohibited.   Prima facie it is sufficient.   If the legislature had thought it necessary to impose other conditions precedent to the exercise of jurisdiction, it would doubtless have done so; but having specified these, the purchaser had a right to assume that they were the only essentials.   While the better practice would certainly have been to have made the petition fuller, failure to do so was a mere irregularity which was cured by the decree of sale.   It was not necessary that the purchaser should follow step by step the investigation of incidental details which it was the duty of the court to make.   It was enough for him that the record showed those which the legislature had made the ground of its exercise; being an innocent purchaser for value he was entitled to protection not only from direct but, with much more reason, from collateral attack.   Once concede that he must inquire into relevant facts outside those which the act requires the "application" shall "set forth," it will logically follow that he must inquire into the truth of petitioner's averments; for the court must be presumed to pass on all the essential facts, and may as readily make a mistake in respect of one set as of the other.   If in truth there be no debt, a sale made by virtue of a decree of the orphans' court within five years after a debtor's death would, on this theory of construction, convey no title.   The practical effect must be to seriously cripple an important branch of orphans' court jurisdiction, unsettle many titles, bought for value in good faith, and bring a flood of litigation.

The 57th section of the act of March, 1832, regulating the manner of proceeding in the orphans' court, prescribes that it shall be on the petition of a person interested " setting forth " facts necessary to give the court jurisdiction, etc.; the 19th section of the act of June 16, 1836, declares that such jurisdiction shall be exercised under the limitations and in the manner provided by law; and the proceeding under which the sale was made in this case was in exact accordance with that prescribed by law.

This view is amply sustained by the authorities.  The general principle which runs through all the cases is that where a court of competent jurisdiction assumes to proceed, its record must set forth such facts as show jurisdiction; but it is not necessary that it set forth all the facts out of which jurisdiction springs.  The application of this principle has given rise to the rule of evidence which is imbedded in the maxim omnia præsumuntur rite esse acta donec probetur in contrarium; and nothing but want of jurisdiction, apparent on the face of the record, or fraud, is recognized as a basis of question.  The act of 1832, in which it was enacted that the orphans' court should be a court of record whose "decrees in all matters within its jurisdiction shall not be avoided collaterally in any other court," was simply declaratory of the law as it stood: Merklein v. Trapnell, 34 Pa. 42.  In the leading case of McPherson v. Cunliff, 11 S. & R. 422, it was held that a decree of sale made by the orphans' court was an implied adjudication of the legitimacy of those who had been named in the proceedings as children of the decedent, which the heirs at law were estopped from denying.  "A purchaser," said Mr. Justice HUSTON, "is not bound to look whether the court is mistaken as to the facts of debts or children. . . . The court has decided that there were debts, and children to support, and no personal estate to pay debts and support the children; and on that state of adjudged facts, they decree a sale.  Beyond this the purchaser is not bound to look.  The inquiries upon an ejectment are: Was there an administrator and an order to sell such as would authorize the administrator to make sale . . .?  The irregularities or mistakes of fact after sale confirmed, money paid, conveyance executed, possession for twenty years, improvements of twenty times the value of the property, fair purchasers deriving title by subsequent conveyances, cannot affect the purchasers."  So it was held in Painter v. Henderson, 7 Pa. 48, on the same principle, that jurisdiction to award a purpart to the widow in partition could not be questioned collaterally.  So in Potts v. Wright, 82 Pa. 498, the fact that the record did not show bond given by the administrator as required by statute was held to be an irregularity which was cured by the decree of sale.  So it was held in Shoenberger's Estate, 139 Pa. 132, that the decision of the register, granting letters testamentary on a foreign will, implied

that he had judicially found the principal part of the estate to be located in the county, and "it could not therefore be made the subject of collateral attack." So it was held in Gilmore v. Rodgers, 41 Pa. 120, that a mistake in the interest of the parties by the decree in partition was cured by the decree. In Grindrod's Estate, 140 Pa. 161, where an orphans' court sale was sought to be set aside on the ground that the petitioner was a minor without guardian or notice, it was refused because of a delay of ten years. "Something is due," said the Court, "to the finality of judgments. The orphans' court after such a lapse of time has no power, unless perhaps in the case of fraud practiced upon it, to set aside the sale and vacate its own decree;" and much less can "any other court." Numerous cases to the same effect might be cited illustrating the application of this principle, but these are enough to show the current of decision and sustain defendant's title. The application here was made by the proper party and set forth the existence of an unpaid debt, the insufficiency of personal estate, and the necessity of selling decedent's real estate in accordance with the directions contained in the act of 1832; and the decree of sale was an adjudication that these averments were facts and the sale necessary. There was nothing on the face of the record to put the purchaser on inquiry as to want of jurisdiction. He had no notice of the actual date of death; but the grant of letters and decree of sale justified him in believing it was recent. He had a right to presume that all things had been rightly done. If, in these circumstances, having in good faith paid the purchase money and retained the unquestioned and undisturbed possession for nearly twenty years, he can now be held responsible for the mistake of the court in its findings of fact, such sales are indeed, as was said by Mr. Justice HUSTON in McPherson v. Cunliff, supra, "Snares for honest men."

On the other hand, these plaintiffs have no equity either for direct or collateral attack. Those through whom they claim, having certainly had at least constructive notice by advertisement, both of the sale and the account and distribution of the proceeds, must be presumed to have acquiesced, and it is now too late to question their validity. "Something is due," as was said in Grindrod's Appeal, supra, "to the finality of judgments." So far as appears the property was sold for a full

price which went for the payment of the decedent's just debts; the sale received the sanction of a court of competent jurisdiction whose peculiar duty it was to protect under the law the rights of all parties interested; and yet these plaintiffs seek to recover this property from defendant without repayment of the purchase money, with its interest, or to make compensation for the cost of valuable improvements. The injustice, to say the least, of this claim is manifest: Klingensmith v. Bean, 2 Watts, 486; Jacoby v. McMahon, 174 Pa. 133.

The cases upon which plaintiffs rely are clearly distinguishable from the present. In Pry's Appeal, 8 Watts, 253, and Oliver's Appeal, 101 Pa. 299, no sales were made, but the appeals were from orders of sale. Bindley's Appeal, 69 Pa. 295, involved a question of distribution of the proceeds of a sale the validity of which was conceded; in Maus v. Hummel, 11 Pa. 228, there was enough on the face of the record to put the purchaser on inquiry which would have led him to the knowledge of the date of the debtor's death, and consequent want of jurisdiction; and Grier's Appeal, 101 Pa. 412, was ruled on the ground that the record failed to show compliance with a statutory requirement. In Torrance v. Torrance, 53 Pa. 505, so much relied on in support of the plaintiff's claim, want of jurisdiction appeared on the face of the record. The sale could not be sustained on the ground of the payment of debts, because there was no averment of such, nor on the ground of the payment of legacies, because of the want of proper parties; but, in deciding thus, this court was careful to note the alternative presumption of validity. "We are not unmindful," said Mr. Justice AGNEW, "that general jurisdiction over the subject protects the decrees of the orphans' court from being assailed collaterally. But this is not such a case. Had the application been to sell the testator's estate for his own debts, their existence might be presumed; or had it been to sell the devisee's estate for the payment of legacies charged upon it, the want of authority in the executor to petition would have been but an irregularity." This analysis of cases, upon which plaintiffs' claim of title is mainly rested, shows that the right of collateral attack on decrees of orphans' courts was recognized because, and only because, of want of jurisdiction apparent on the face of the record; and that they afford no color for the proposition that

purchasers at orphans' court sales must, at their peril, inquire into relevant facts outside of those which the statute prescribes as the basis of jurisdiction.

It will thus be seen that the sale in this case was within both the letter and the spirit of the law, and that the defendant was an innocent purchaser for value entitled to protection.