# John Hemphill v. D. M. Pry, Executor of the Will of J. T. Fredericks, deceased, William H. Fredericks, W. J. Fredericks and Sarah F. Marks, terre-tenants, Appellants.

*Decedents' estates—Sale of mortgage of real estate—Notice to widow and heirs.*

Although the statute relating to the sale and mortgage of decedents' estates for the payments of debts does not require notice to the widow or heirs or devisees, yet the orphans' court as a court of equity will direct that proper notice shall be given, and an opportunity for hearing be afforded, when the lapse of time or other circumstances in the case raise a reasonable presumption that other rights may have intervened.

*Decedents' estates—Will—Power of sale—Mortgage—Minors.*

Testator by his will gave to his executors a power to sell for the general purposes of the will, but expressly limited the power to five years. In his lifetime testator had executed certain promissory notes, and after his death interest had been paid upon the notes by the executor with the assent of the widow and heirs. Two of the heirs, however, were minors without a guardian, and after their majority they conveyed their interests to another person. Nine years after decedent's death, and after the conveyance of the minors' interests, the orphans' court directed that the real estate of the testator should be mortgaged to secure the payment of the notes. There was evidence that some of the interest paid upon the notes was within six years of the date of the mortgage. *Held*, that while the mortgage was valid against parties assenting to the payment of interest, it was invalid as to the minors, because they had no power to assent, and it was therefore invalid as to their grantee.

Argued Oct. 19, 1897. Appeal, No. 73, Oct. T., 1897, by defendants, from judgment of C. P. Washington County, May Term, 1896, No. 122, on verdict for plaintiff. Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Scire facias sur mortgage. Before TAYLOR, J.

At the trial it appeared that J. T. Fredericks died on July 21, 1886, indebted to Margaret Hemphill upon two promissory notes not under seal, for $1,000 each. One of the notes was dated April 1, 1884, at twelve months, and the other September 1, 1885, at one year. These were the only debts of the testator. No suit was ever brought or judgment obtained on the notes.

Testator directed by his will, inter alia, as follows :

" Second. I direct that all my honest debts.be paid as soon after my decease as convenient.

" Third. . . . I further direct that all my real and personal property be sold and converted into money except my household goods my wife Mary desires for her own use, excepting my library, which I direct shall be equally divided between my three sons.

"I hereby.grant unto my executors the term of five years in which to make sale of my estate as aforesaid, using said time as in the judgment of my executors and family may be deemed best in the interest of my estate. . . ."

Testator left to survive him a widow and four children. On March 1, 1895, under an order of the orphans' court, the mortgage in suit was executed by the executor of the will of J. T. Fredericks to secure the notes given to Margaret Hemphill. There was evidence that interest had been paid upon the notes by the executor with the knowledge and consent of the widow and children within six years of the date of the mortgage.

Two of the children, however, John B. and David P., were minors at the time of the alleged knowledge and consent, and after they reached their majority on December 15, 1894, they conveyed their interest to W. H. Fredericks, one of the appellants.

The court charged in part as follows :

On July 21, 1886, the Rev. J. T. Fredericks, of Burgettstown, in this county, died seized of some real estate which has been described in your hearing. He left a will, and to survive him a widow and four children. In his will he nominated, constituted and appointed one D. M. Pry the sole executor thereof, and the will has been read in your hearing. One of the provisions of it was, that his executor therein named had five years in which to settle up his estate, either by the sale of his property, or in any manner that would be a final settlement of it according to law. We take that provision of the will to mean this, that for the period of five years after Mr. Fredericks' death no one could force the executor to file an account or settle his estate ; and nothing was done by way of a settlement except the payment of the funeral expenses, perhaps, and some little in-

debtedness that existed, during that five years, and the reason was given to you by Mr. Pry upon the stand that during that period and afterwards, owing to the depressed condition of the real estate market, it was deemed best by all parties concerned, that is, the widow, who then lived, and the four children, in connection with the sole and only creditor of the estate at that time, Mr. Hemphill, the plaintiff here, that the period given by Mr. Fredericks in his will to his executor to settle his estate should be extended after the expiration of the five years, and that the plaintiff would not demand payment of his claim. That is, the plaintiff in this suit, Mr. Hemphill, who then, it is shown, had two notes given by Rev. J. T. Fredericks, which were given by Mr. Fredericks in his lifetime (and the correctness of that is not denied in this case), was the sole and only creditor of the estate at the time that this five year period expired; that it was acceptable to the heirs and the widow, and to Mr. Hemphill, who did not need his money except the interest, that his notes should still continue unpaid, there being no personal assets on hand to discharge the debt, and none of this land, which we hold by law, under the will (having passed upon that before) was a conversion,—that none of this land should be sold to discharge this debt of Mr. Hemphill's, owing, as Mr. Pry says, to the depressed condition of the market, and that he would not enforce payment of the principal at that time, and all he desired was the interest payable on these notes as it became due; that the widow and all the heirs, Mr. Pry says, in connection with himself, agreed to this arrangement for these reasons, of weight to both parties, and that Mr. Hemphill, who was the creditor, also agreed to it. The recollection of the court is,—but that is one question of fact, gentlemen, for you to find from the evidence,—that Mr. Pry said that he had a conversation with various members of the family of Mr. Fredericks, the widow and children, at different times in person, and those of the children with whom he did not talk in person, he communicated with by persons and letters about it, and had received word from them that this arrangement was satisfactory to them, and that no property should be sold, and that Mr. Hemphill's debt was to continue, rather than sell land, by the payment of the annual interest as it became due. That was done up until March 1, 1895, I believe, when this debt was merged into the mortgage

by Mr. Pry, the executor, coming into this court on petition and asking leave of the court at that time to mortgage this land for the payment of Mr. Hemphill's debt of $2,000; the court granted leave to the executor to do that, and this land, a portion of it, such as was necessary, was mortgaged under the direction of the court for the purpose of the executor receiving the money and paying off this indebtedness of the plaintiff. Of course exceptions were taken by the counsel for the defense here as to the jurisdiction of the court to authorize this mortgage, as you have heard here, but that is purely a question of law for the court with which the jury has nothing to do. [The court passed upon that at a former trial and has taken the position that the act of 1834, under which the defendants in this case claim that the executor had no authority, does not apply to this case under the facts of this case; but a question for your determination is, whether or not you believe the statute of limitations pleaded here (which is a question of fact and must be found by the jury) would operate as a bar to the recovery of the plaintiff for the amount of his unpaid mortgage with the interest to this date.] [13]

Now, the first indebtedness to the plaintiff existed by these two notes which have been described in your hearing, and offered in evidence here, both of which are shown not to be under seal; they are old notes,—they were given by Mr. Fredericks in his lifetime; that they were not barred by the statute of limitations at the time of the maker's death, and that they were valid, subsisting indebtedness at that time against his estate. and have never been paid except by this mortgage now sued upon, we do not understand to be gainsaid; but after his death the statute of limitations would begin to run against them, under the act of 1713, I believe it is, which bars recovery upon evidences of indebtedness of this kind at the end of six years, if no payments were made on them, or either of them, or no new promise to pay made to take them out of the statute of limitations. The notes as they stand themselves on the face of each, without any answer to them, and as the defense have introduced them in evidence, would be barred by the statute of limitations before this mortgage which took them up, was given; but, gentlemen, Mr. Pry, the executor, and Mr. Hemphill, the plaintiff in this suit, both witnesses in the case, say that the

interest was paid on them each year, I think, as it fell due, after Mr. Fredericks' death, and Mr Hemphill says that he received the interest from the executor, and it was paid and received under this arrangement or agreement that was made with the widow and himself and the heirs in the manner in which Mr. Pry testified it was made,—if you find that to be the fact,—that the interest was paid on both of these notes up until March 1, 1895, when Mr. Pry, as executor, made his application to this court to sell; that the creditor agreed to wait if they paid the interest on these notes, and they agreed to pay the interest and actually did pay it,—if you find that to be the facts in the case, as testified to, then the bar of the statute has been tolled by the payment of the interest upon these notes to the executor, and by him to the creditor of the estate, if you further find it was under an arrangement or agreement with the widow and heirs, including all of them and all the parties in interest that had any right or interest in this estate.] [14]

Now, one of these defendants here introduced an article of agreement in evidence by which he takes the interest, by purchase, of two of these heirs. There is some reference made in that to this Hemphill indebtedness, perhaps not the full amount of it—

Defendants' counsel : That is a different judgment, your honor.

By the Court: I may not remember as to that, but I heard it read as the Hemphill indebtedness, and it appears that it is another Hemphill, not the plaintiff, referred to, and you will disregard that, gentlemen of the jury ; the court's impression was that it referred to this indebtedness ; but aside from that, the executor at that time had not finally settled the estate. W. H. Fredericks claims that he has an interest in this mortgaged real estate, having agreed to purchase the interest of two of the boys, and is one of the defendants here resisting the collection of this mortgage. When he contemplated purchasing an interest in the Fredericks' estate it was incumbent upon him to know what the condition of the estate then unsettled was, and if he bought it without making an investigation, and there were unpaid, valid, legal claims against the estate, claims which the law at that time recognized as being in force, he would take it subject to any burden that was upon it. The mere fact that one of the

defendants here on the record, by his own seeking, had acquired an interest in this property, if the law gave Mr. Hemphill his right to recover that which is admitted to be owing to him, and which it is sought to avoid the payment of because of some interposition of an outside party,—he would be chargeable with notice under the law. But this is not a question to be determined by you, but one of law which the counsel for defendant will submit to the court; but we might as well say here on this point, that purchasers of an interest of an heir stand in the shoes of the heir whose interest he has purchased, and the rights of a creditor of the estate, under any binding agreement with the executor and heirs or devisees, cannot be prejudiced by the subsequent sale by one or more of the heirs or devisees of their interest in the estate.

We think the questions here for you are, the effect, if any, of the statute of limitations and this agreement; it being admitted by counsel that the only question for you to determine is upon this question of the statute of limitations,—was this arrangement that Mr. Pry testifies was made by the widow and heirs and himself with the plaintiff, by which this interest was received on this Hemphill indebtedness and paid over to him, —was it a binding, valid arrangement entered into by all of them, that they all had knowledge of it and agreed to it? If you find that to be the fact, then the court would be of the opinion that this plaintiff ought to have his money,—what is due to him, and so we think you would be of the same opinion. If you find, however, that no such arrangement was entered into, and Mr. Pry was acting solely on his own behalf in the matter, without having consulted the heirs and widow, or they had no knowledge of it, and they are protesting against it, then your verdict would be the other way,—for the defendants. But we say to you if you find these facts to be in existence at the time these payments were made on these notes, on this indebtedness, and that they were received up until the 1st of March, 1895, when the mortgage was given, and the mortgage took the place of these notes, why this bar of the statute of limitations is removed, if it ever began to run under the circumstances of this case. And with that, we leave the case with you, with the instruction that the burden is upon the plaintiff to make out his case by a preponderance of the evidence, before he can recover a verdict at your hands.

The court refused binding instructions for defendant. [12]

Verdict and judgment for plaintiff for $2,368.65.   Defendants appealed.

*Errors assigned* among others were (12–14) above instructions, quoting them.

*M. L. A. McCracken* and *James S. Young*, with them *B. E. McCracken* and *S. U. Trent*, for appellants.—The notes were barred because action was not commenced upon them within six years after the cause of action upon them arose: Claghorn's Est., 181 Pa. 600; Keener v. Zartman, 144 Pa. 179; Clark v. Maguire, 35 Pa. 259.

The notes were barred because suit was not commenced within five years after the death of the decedent.   The reason lying at the foundation of the decisions that the act of 1834 does not apply when the testator directs his land to be sold for the payment of debts is that there is an express trust in the executor as trustee for the payment of those holding debts against the estate, and no statute of limitations applies against the trust: Agnew v. Fetterman, 4 Pa. 56; Alexander v. McMurry, 8 Watts, 504; Steel v. Henry, 9 Watts, 523; Hall v. Boyd, 6 Pa. 267; Baldy v. Brady, 15 Pa. 103; Buehler v. Buffington, 43 Pa. 278; Trinity Church v. Watson, 50 Pa. 518; McCandless's Est., 61 Pa. 9; Buffington v. R. R., 74 Pa. 162; Oliver's App., 101 Pa. 299; Yorks's App., 110 Pa. 69; Scitzinger's App., 170 Pa. 531.

The proceeding to mortgage was irregular and void, because notice was neither required by the court to be given to the widow or purchaser, nor was the mortgage given to raise money to pay the debt, but only for the purpose of substituting it for the barred notes.

*H. M. Dougan*, for appellee.—Interest was paid on the first note after April 1, 1891, and on the second note after September 1, 1892; the payments of interest upon each note being to March 1, 1895, the date of the mortgage in suit.   No more unequivocal acknowledgment of the validity of the notes could have been made: Burr v. Burr, 26 Pa. 284; Barclay's App., 64 Pa. 70.

Mr. Pry, the executor, knew that these notes were just claims

against his testator's estate, and the execution of his duties did not require him to oppose their payment: Woods v. Irwin, 141 Pa. 295; Ritter's App., 23 Pa. 95; Fritz v. Thomas, 1 Wharton, 66; McFarland's Est., 4 Pa. 149; Smith v. Porter, 1 Binney, 209; Steel v. Steel, 12 Pa. 64.

The cases on the subject, from Alexander v. McMurry, 8 Watts, 504, to Seitzinger's App., 170 Pa. 531, all hold that where it is obvious that a testator did not intend his real estate to reach his beneficiaries in the shape of realty itself, but rather in the shape of the proceeds of a conversion of it into money, the requirements of section 24, of the act of February 24, 1834, are inapplicable: McWilliams's App., 117 Pa. 111.

OPINION BY MR. JUSTICE MITCHELL, January 3, 1898:

The practice of orphans' courts in ordering sales or mortgage of the real estate of decedents for payment of debts, years after death and after the usual statutory period of limitations has run, appears to have become very loose, and is in need of revision and greater caution for the preservation of the rights of heirs and devisees. The learned court below in their opinion on the question reserved at the first trial, expressed the very proper view that the better practice would be to have all the jurisdictional facts appear at large on the petition for the order of sale. But even this is not always enough. The statute unfortunately does not require notice to the widow and heirs or devisees, as it ought to do, but the orphans' court is a court of equity, and when the lapse of time or other circumstances in the case raise a reasonable presumption that other rights may have intervened, it is always the duty of a chancellor, even of his own motion, to be satisfied that such rights shall not be prejudiced without notice and an opportunity of hearing. In the absence of such opportunity the proceedings will be closely scanned to see that they conform strictly in all respects to the law.

In the present case the order to mortgage was made nearly nine years after decedent's death, and more than six years after the notes which it was to secure had become due. Prima facie, therefore, the notes were barred by the statute of limitations, and their statutory lien as debts of the decedent upon his real estate had expired. This was the situation when the appellant, W. H. Fredericks, purchased the interest of two of the heirs.

What was there to prevent his acquiring a clear title? It is said that there was a direction by the testator to sell for the payment of debts, and this took the case out of the statute. But the direction was the usual formal one that all his "honest debts be paid as soon after (his) decease as possible," and the further direction to sell was "that all my real and personal property be sold and converted into money . . . . I hereby grant unto my executors the term of five years in which to make sale of my estate as aforesaid." There was here no express trust to sell for the payment of debts, the power to sell was for the general purposes of the will, and was moreover in express terms limited to five years, which had expired before this mortgage was made. But it is further said that the running of the statute of limitations against the note had been prevented by the payment of interest on them by the executor, with the assent of the widow and heirs. This is the only ground on which the judgment can be sustained, and so far as the evidence justified the verdict it was entirely sound. The law was correctly stated by the learned court in their opinion on the question reserved at the first trial that "the jury should have been instructed that if the notes of Margaret Hemphill were not under seal and were overdue six years before the mortgage was given, that the mortgage was invalid as against the intervening defendants unless the interest was kept paid upon the notes after the death of J. T. Fredericks, either by them or by the executor with their knowledge and consent, to within six years of the date when the mortgage was given, or unless something was done by them that would stop the running of the statute as against the collection of Mrs. Hemphill's notes, or stop them from calling in question the validity of the mortgage." The mortgage was clearly valid against parties assenting to keeping the notes alive by payment of interest, but on the second trial the court unfortunately overlooked the fact that two of the sons were minors at the time of such payments and could give no assent which would bind them. When they sold to a purchaser, the appellant, they disaffirmed any assent they may have given during infancy, and as already shown, the statute of limitations had already apparently run against the notes, the statutory period of lien of debts had expired, and so also had the testamentary power of sale given to the executor. Whether or

not under these circumstances a purchaser would be bound by a secret lien, under the rule that a purchaser from an heir takes only such interest as the heir may ultimately be shown to have, it is clear that he would not be so bound unless his grantor would also. As already said, the two grantors of appellant, W. H. Fredericks, were minors at the time, and we have examined the testimony carefully without finding anything to show that they even expressly consented, much less that they had a guardian to advise and care for their interests. There was therefore no sufficient evidence to justify the submission to the jury of the question of assent as against them, or their grantee.

Judgment reversed as to appellant, W. H. Fredericks.