Daniel Smith, Sylvanus K. Smith, John J. Smith, Cassa Jane Rees, Robert H. Burge, Lida Florence Burge, Franklin Burge and Nettie May Burge, by their Father and next friend, Robert H. Burge, *v.* William Wildman, Appellant.

*Orphans' court sale—Jurisdiction—Title—Lien of decedent's debts.*

Where a petition to the orphans' court for an order to sell real estate shows on its face that the debt was on a parol contract eleven years old, the court has no authority to grant the order without an averment, followed by proof, that the debt was still existing in a lawful condition for enforcement at the time when the petition was presented.

*Ejectment—Evidence—Resulting trust—Orphans' court sale.*

In an action of ejectment, where the defendant claims title under an orphans' court sale to his grantor, evidence of a resulting trust in the creditor for the payment of whose debt the sale was made is incompetent and irrelevant.

Argued Oct. 19, 1899.   Appeal, No. 162, Oct. T., 1899, by defendant, from judgment of C. P. Greene Co., April T., 1892, No. 128, on verdict for plaintiffs.   Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Ejectment for land in Springhill township.   Before CRAW-FORD, P. J.

The facts appear by the opinion of the Supreme Court, and by the previous report of the case in 178 Pa. 245.

At the trial Smith Lippincott, a witness for defendant, being on the stand, counsel for defendant said:

I want you to state about going up to see the children of Mr. James Smith, about the acknowledgment of the deeds to your mother for this land in controversy, and what you did at the time you went up there.

Counsel for plaintiffs objected to the evidence as incompetent and irrelevant, because it occurred entirely between parties other than those to this suit.

Mr. Sayers, of counsel for defendant: We want to show by this witness, who went up there for the purpose of getting the

children of James Smith, who were once in possession of this property that was sold to his mother, for the purpose of getting them to execute a quitclaim deed to his mother for this property, and what he did in pursuance of that.

The Court: Objection sustained and exception sealed for defendant. [4]

Mr. Sayers: I offer to prove by Rebecca Jane Lippincott, a sister of James Smith, plaintiffs' intestate, that, in pursuance of her title, her claim of title in this land, Mrs. Catharine M. Smith, the widow of James Smith, deceased, made a quitclaim deed to her for all her dower rights and interest she may have in that land on May 15, 1865. I offer this in connection with the evidence already in to show that the title which Jacob King and wife made to James Smith was in the nature of a resulting trust to Rebecca Jane Lippincott and so recognized by the heirs after the death of their father.

Counsel for plaintiffs: We object to the evidence as irrelevant and incompetent for the purpose for which it is offered, and that it is further incompetent and irrelevant because the matters proposed to be proved occurred entirely between parties other than the parties to this suit.

The Court: Objection sustained and exception sealed for defendant. [5]

Mr. Sayers: I offer to prove by Mrs. Rebecca Jane Lippincott the simple fact that the widow of James Smith, deceased, and Rachel Smith, Daniel Smith, Mary J. Smith, S. K. Smith and Jennie Smith, made these deeds to the witness, and to be followed by evidence of witness that these deeds recognized title in the witness at the time they were made.

Counsel for plaintiffs objected to the evidence as irrelevant and incompetent, because no action of the parties mentioned could affect the interests of the plaintiffs in this suit.

The Court: Objection sustained and exception sealed for defendant. [6]

Mr. Sayers: I offer to show by the same witness that her husband died something over a year ago, insolvent; that she herself is a lady of small means, and that she has no interest whatever in the event of this suit; this for the purpose of making her a competent witness to testify to relevant facts in the case.

Counsel for plaintiffs objected to the evidence as irrelevant and incompetent, because, if true, the facts set forth in the defendant's offer would not make the witness competent to testify as to the alleged resulting trust in the land in question.

The Court: Objection sustained and exception sealed for the defendant. [7]

Mr. Sayers: I offer to prove by the witness on the stand an agreement between her brother and herself in relation to the purchase of the land in dispute from Jacob King, whereby it was agreed between the brother and the witness that she was to furnish the purchase money and he was to take the title in trust for the witness, together with the further fact that she was at the time of this agreement a married woman; and, also, in order to render her competent as a witness in this transaction, that at the time she made the warranty in the deed with her husband she was a married woman, and therefore she was not liable at the time and is not now by virtue of her warranty and is therefore a competent witness.

Counsel for plaintiffs objected to the witness as incompetent to testify to matters occurring in the lifetime of James Smith, deceased, and further in reference to the transactions between herself and the deceased in his lifetime.

The Court: Objection sustained and exception sealed for defendant. [8]

Verdict and judgment for plaintiffs for two fifths of the land. Defendant appealed.

*Errors assigned* were (1) in giving binding instructions for plaintiffs; (4–8) rulings on evidence, quoting the bill of exceptions.

*James E. Sayers*, with him *W. A. Hook*, for appellant.—The judgment of a proper court, being a sentence or conclusion of law upon the facts contained within the record, puts an end to all further litigation on account of the same matter, and becomes the law of the case, which cannot be changed or altered, even by consent of the parties, and is not only binding upon them, but upon the courts and juries ever afterwards, as long as it shall remain in force and unreversed: Bolton v. Hey, 168

Pa. 418; Brenner v. Moyer, 98 Pa. 278; Marsh v. Pier, 4 Rawle, 273; Thornton v. Baker, 15 R. I. 553; Osborn v. Sutton, 108 Ind. 443; Florentine v. Barton, 2 Wall. 210; McDade v. Burch, 7 Ga. 559; Boyer v. Schofield, 2 Keyes, 628; Regina v. Bolton, 1 Ad. & El. (N. S.) 66; State v. Gary, 33 Wis. 93; Whittlesey v. Frantz, 74 N. Y. 456; Boyd v. Blankman, 29 Cal. 19.

*Franklin P. Iams*, with him *J. W. Ray, H. B. Axtell* and *C. C. Brock*, for appellees.—The evidence in this case, even if supplemented by that of Jane Lippincott, contained in the offer, would not have been sufficient to establish a resulting trust in her to the land in question: Bowen v. Haupt, 192 Pa. 406.

Everything worthy of consideration upon the trial of this case was disposed of by this Court in the case of Smith et al. v. Wildman, 178 Pa. 245.

This case was carefully considered by this court when here before and decided. A motion for a reargument after further consideration was refused. This appeal is, therefore, in substance, nothing more than an attempt to secure a reargument under color of an appeal. This is not admissible: Cowen v. Plate Glass Co., 188 Pa. 542.

OPINION BY MR. JUSTICE GREEN, January 2, 1900:

While it is true that when this case was here before (178 Pa. 245), we were of divided opinion, we now decide to abide by the decision then made. It is scarcely necessary to repeat the reasons for our judgment which were fully expressed in the opinion of our late Brother WILLIAMS. As a matter of fact, upon the testimony, the orphans' court which granted the order of sale of the land in question had no jurisdiction to make such a decree. But the case was worse than that, because on the face of the petition for the order there was a presumption of the want of jurisdiction which was not explained by any averments in the petition, nor by any evidence given in its support. While the date of the death of James Smith, the intestate, was not stated in the petition the debt upon which the order was asked for was stated to be:

Amount paid to her (Rebecca Jane Lippin-
    cott) on parol contract for decedent  .  .  $702.74
Interest on same 11 years   .   .   .   .    463.76
                                                    $1,166.50

According to this, the debt accrued by reason of a payment made by Rebecca J. Lippincott for James Smith on a parol contract, eleven years before June 10, 1872, when the petition was presented. No bond, note or other written obligation was alleged to have been given; only the bare fact was stated that eleven years before, which must have been in 1861, this creditor had paid for the decedent upon a parol contract, the sum of $702.74. This being so, the debt was barred by the statute of limitations, no matter when James Smith died, and no orphans' court could have any authority to grant an order of sale of real estate for the payment of such a debt without at least an averment, followed by proof of facts which showed that the debt was still existing in a lawful condition for enforcement at the time when the petition was presented. On the trial of the present case no attempt was made to remove this prima facies of invalidity in the grant of the order, but full proof was made by the plaintiffs that James Smith had really died more than ten years before the petition was presented. It is not a case, therefore, where the presumption of validity arises upon the mere proof that the order was made and that, therefore, the maxim omnia presumuntur rite esse acta prevailed. On the contrary, on the face of the proceedings, it is manifest that, without other facts being made to appear, the order of sale was illegally granted. But more than this, the purchaser, Wm. Lippincott, at the sale which took place under the order, was the brother-in-law of the decedent, and the husband of the alleged creditor for the payment of whose debt the order of sale was granted, and he necessarily knew that James Smith, the decedent, had died ten years before the order of sale was granted, and that the land was at the time of the sale the property of the minor children of the decedent, and altogether divested of the lien of his debts. There was good reason, therefore, why the petition for the order of sale studiously concealed the date of James Smith's death from the knowledge of the court. If that fact had been stated in the petition, as it most certainly

should have been, the order of sale would necessarily have been refused, unless affirmative proof had been made showing that the lien of the debt upon the land of the decedent had been preserved. It is no excuse to the court that an order was granted without such proof, because the petition itself disclosed a prima facies of illegality upon which the order should have been refused. It is quite manifest from the other record facts in the case that the order of sale was a scheme concocted to divest the lawful title of the minor children to their own lands. No administration had been taken out on the estate of their dead father, and ten years had elapsed from his death; there was no other debt but this one alleged, and its lien had long since been lost. There being no other way of getting the money for the debt, administration was taken out manifestly for the purpose of getting an illegal order of sale and, to obtain that order, a plain fraud was practiced upon the court by withholding all knowledge of the date of the intestate's death. It is almost needless to say that so far as Wm. Lippincott and his wife were concerned the sale was absolutely worthless, and conferred no title to the land, both for want of jurisdiction and for fraud on the court. The helpless and unprotected orphan children were in no condition to assert their rights, and were probably in entire ignorance of their rights until many years after. These comments are not essential to the impeachment of the defendant's claim of title, but are quite pertinent to strip from the case the air of injured innocence and apparent hardship with which it has been sought to be clothed. The defendant is not by any means in the position of an innocent purchaser for value without notice. He did not buy an ancient title apparently good, but a very modern one indeed, apparently bad. His purchase was made in 1888, only sixteen years after the order of sale was granted, and the least examination of the record of the title he was about to buy would have disclosed the fatal defect in the proceedings. It was a very queer looking title at the best, and abundantly suspicious to put him upon diligent inquiry. Although James Smith was the owner at the time of his death, the land was sold by Rebecca J. Lippincott soon after his death, in 1862, to Isaac Hupp, without anything to show that she had any title whatever. About three years later a quitclaim deed was obtained from Smith's widow. Nat-

urally Mr. Hupp was not satisfied with such a title, and so in 1872 an administration was raised, and a sale was had under an order of the orphans' court in order to perfect the title. This statement is taken from the appellant's history of the case which is at least entitled to credit for its blunt candor. No pretense is made that this sale had any merit of fact to sustain it. It is not for one moment contended that the alleged indebtedness of James Smith to Mrs. Lippincott had in point of fact any lien whatever upon the land of Smith at the time the order of sale was obtained. Nor is there the least apology or excuse presented for the attempt to foist upon the court so utterly worthless a claim for a legitimate order of sale. Absolutely nothing is now claimed to support this title except the bare technical proposition that it cannot be impeached in a collateral proceeding. With that question the former opinion has sufficiently dealt. These considerations dispose of the first three assignments of error. The fourth assignment certainly has no merit. It was of no kind of consequence what took place when the witness attempted to get a quitclaim deed from the children of the decedent. If he obtained it, the deed would speak for itself, if he did not, the title of these plaintiffs could not be thereby affected.

There is nothing contained in the rejected offers of testimony covered by the fourth, fifth and sixth assignments of error that in any way connects the present plaintiffs with the offers of proof, and they certainly could not be divested of their title by anything that took place between other persons. Even if the offers tended to show ground for a claim of title by way of a resulting trust, such a claim is absolutely at war with the only claim that is really set up in the case, that the money paid by Mrs. Lippincott was loaned to James Smith and made him a debtor to her for the amount paid, and it is upon that ground only that the order of sale under which alone title is claimed can be sustained. If James Smith was her debtor for the money as a loan, she certainly was not the equitable owner of the land by way of a resulting trust. The seventh and eighth assignments relate to a further offer to prove a resulting trust by the testimony of Mrs. Lippincott. It is impossible to see how if such testimony were admitted it could affect the title of these plaintiffs. We think the witness was incompetent under the

act of 1887, but without reference to that question, the subject-matter of the testimony could not possibly divest the plaintiffs' title, and it was therefore irrelevant and inadmissible. The pretense of a title by way of a resulting trust is too trifling for serious consideration.

STERRETT, C. J., MITCHELL and FELL, JJ., acquiesce in this judgment on the authority of the decision in 178 Pa. 245, and their unwillingness to sanction a reargument sought collaterally by raising again a point already decided in the same case.

Judgment affirmed.