## Grubb, Appellant, *v.* Galloway.

*Orphans' court sale—Title—Lien of decedent's debts—Mortgage—Validity of decree.*

Where a petition to the orphans' court by an administrator for leave to mortgage real estate for payment of debts avers the death of the decedent within five years, and the existence of debts of which a schedule is filed, and a decree is entered in accordance with the prayer of the petition, the decree is conclusive that the debts mentioned in the petition were debts of the decedent, a lien on his real estate, and of a proper amount to require the mortgage petitioned for. The mortgagee may rely upon the decree as a conclusive adjudication of all the facts, and the decree cannot be attacked in subsequent scire facias proceedings on the mortgage, on the ground that the schedule of debts in the petition exhibited such looseness or irregularities as to put the mortgagee upon inquiry as to the actual facts.

Smith *v.* Wildman, 178 Pa. 245; 194 Pa. 294, criticised and distinguished.

Argued May 7, 1902. Appeal, No. 201, Jan. T., 1901, by plaintiffs, from judgment of C. P. Blair Co., Jan. T., 1898, No. 543, in case of Daisy E. B. Grubb et al., Trustees under the Will of Clement B. Grubb, *v.* Margaret Galloway, Administratrix. Before McCollum, C. J., Mitchell, Brown, Mestrezat and Potter, JJ. Reversed.

Scire facias sur mortgage. Before Bell, P. J.

Verdict for plaintiff for $3,380.50, subject to points reserved.

On motion for judgment non obstante veredicto, Bell, P. J., filed the following opinion:

This was a scire facias on a mortgage, executed by authority of a decree of the orphans' court of Blair county, by Mrs. Margaret Galloway, administratrix of Joseph D. Galloway, deceased, to the Pennsylvania Trust Company, of Reading, Pennsylvania, and by said trust company assigned to Daisy E. B. Grubb et al. The defense was a want of jurisdiction on the part of the said orphans' court to make such a decree. The questions involved at the trial were entirely of a legal nature; there were no disputed facts; the court directed a verdict for the amount of the mortgage, $3,000, together with interest, making in all $3,380.50, reserving certain legal questions.

Unfortunately, the points reserved have been lost. A decision has been deferred in the belief that such points might be found, but, now that the stenographer who reported the case is dead, there is but little hope of ever finding said reserved points. The only resort left is to reproduce them from memory. A fair reproduction, I believe, would be as follows :

1. There can be no recovery in this case, as the orphans' court had no jurisdiction to decree, or confirm, the mortgage in question.

2. The plaintiffs can only recover the amount expended to pay off a prior orphans' court mortgage, given by the administratrix to the Logan Building and Loan Association.

3. At most the plaintiffs can only recover for the amounts expended in paying off the two prior orphans' court mortgages, to wit: the mortgage to the Logan Building and Loan Association, and the mortgage to Fay, Hutchison & Company, and necessary expenses attending the obtaining of the mortgage on which suit was brought.

The first point was reserved with right to enter judgment for defendants non obstante veredicto ; the second and third points were reserved with right to reduce the amount of the verdict.

The foregoing reproduced points may not be expressed in the same form or language as were the points presented at the trial, but they cover the legal questions reserved and argued.

Defendants, the heirs of Joseph D. Galloway, deceased, contended that the orphans' court, on September 24, 1894, the date of the decree authorizing the mortgage in suit, had no jurisdiction to decree the mortgaging of the real estate of said decedent, because he had then been dead over five years, having died on December 9, 1888 ; moreover, that said decree was void because of irregularities in the proceedings.

The first objection, I think, is not necessarily a fatal one, because the petition to mortgage stated that said decedent died within five years, to wit: on December 9, 1889, and if there were no other irregularities in the proceedings, the mortgagee would have been warranted in relying on this statement. [But there are sufficient irregularities, or rather omissions, or meagerness of description, to put the mortgagee on inquiry.] [1]

That an authorized decree of the orphans' court directing the

sale, or mortgaging, of the real estate of a decedent can be collaterally attacked, is expressly ruled in Smith v. Wildman, 178 Pa. 245; and Mr. Justice MITCHELL, in Hemphill v. Pry, 183 Pa. 600, condemns the " very loose " practice which sometimes prevails in the orphans' court, and states that " the proceedings will be closely scanned to see that they conform strictly in all respects to the law."

That a mortgagee is bound to inquire and examine, to a certain extent, and is visited with constructive notice, is expressly ruled in Hilton's Appeal, 9 Atl. Repr. 434.

[The statement of the debts appended to the petition to mortgage, presented to the orphans' court on September 24, 1894, was so "loose," as I think, to put the mortgagee on inquiry; and inquiry would have developed the following state of facts:

That to No. 279, 1889, the administratrix presented an order to sell land for the payment of debts; that the debts only amounted to $1,700; that said administratrix returned that she sold, on September 28, 1889 (a date prior to the time of death of decedent, as stated in the petition of September 24, 1894), real estate to the extent of over $1,500, which she represents as "nearly" paying the debts.

Furthermore, that to No. 152, 1894, the administratrix had sold, for the payment of debts, other real estate for $600. But, assume that the mortgagee was not bound to inquire as to such sales of real estate, still, I think, under the peculiar circumstances of this case, that there was sufficient to put the mortgagee on inquiry as to whether any such amount as $3,000 was required to pay the debts of the decedent. The schedule of debts, as has before been stated was " very loose." " Mortgage to Logan Building and Loan Association, six shares, $1,111.06;" "mortgage to Fay, Hutchison & Co., $615.25." No statement of date, maker, or record of said mortgages, no statement concerning, or attempt to identify the judgments, taxes, city liens, or insurance items in this schedule. But, assume that such a " loose " schedule was not sufficient to put the mortgagee on inquiry, most certainly such mortgagees had warning of the irregularities when they came, through their agent, Mr. Weber, to pay out the money.] [2]

[Mr. Weber, as agent for the Pennsylvania Trust Company,

disbursed the $3,000, the amount of the mortgage. He then knew, or ought to have known, that the mortgage to the Logan Building and Loan Association was the only legitimate and bona fide debt of the estate. Said mortgage was authorized by the orphans' court, October 5, 1891, confirmed December 2, 1891. In her petition for leave to execute said mortgage, the administratrix states that the debts are only $500, but some additional money is needed for repairs. An examination of the petition of the administratrix for leave to execute the Fay, Hutchinson & Company mortgage, decree dated September 21, 1893, confirmation November 22, 1893, would have disclosed that it was for a grocery bill contracted by the administratrix. The judgments specified in the petition of September 24, 1894, were all against Margaret Galloway, not Joseph D. Galloway. The taxes, city liens, water rents and insurance all accrued subsequent to the death of Joseph D. Galloway, and in no sense were his debts. All these things Mr. Weber, agent for the mortgagee, knew, or ought to have known, as he disbursed the money; but relying, doubtless, on the conclusiveness of the decree of the orphans' court, he paid no heed to the matter, but paid out the money, borrowed to pay debts of decedent, to claims which accrued long after the death of Joseph D. Galloway, and which did not purport to be his debts.] [3]

[Under such a state of facts, who shall be the loser,—the trust company, who had ample means of knowledge, or the heirs, who had no notice of the proceedings? In the light of the remarks of Mr. Justice MITCHELL, in Hemphill v. Pry, 183 Pa. 600, "that the orphans' court is a court of equity," and that proceedings where the heirs have had no notice "will be closely scanned to see that they conform strictly in all respects to the law," it seems to me to be clear that the trust company, not the heirs, must be the losers.] [4] The assignees of said mortgage stand in no better position than did the trust company : Morgan's Appeal, 126 Pa. 500.

But, I think, the said heirs should be compelled to repay the amount expended in satisfying the Logan Building and Loan Association mortgage. That mortgage was given to pay off debts of the decedent. Had it not been in effect refunded by the present Pennsylvania Trust Company, I see no good reason why the heirs would not have been compelled to pay it

off; they would have had no good or valid defense against said Logan Building and Loan Association mortgage, hence they are not injured by now being compelled to repay to the trust company the amount said trust company expended in satisfying said mortgage. The administratrix might have been warranted in borrowing an additional $200 to pay off attorneys' fees and compensation; it would seem but just then to allow such additional amount to the trust company. Morgan's Appeal, 126 Pa. 500, is a precedent for reducing the amount of an orphans' court mortgage to the sum actually due or properly expended.

Now, May 6, 1901, the first point reserved is refused; likewise the third point; but [the second point reserved is affirmed, and the amount of the verdict is reduced from $3,380.50 to $1,601.28 ($1,154.53 amount expended to pay off the Logan Building and Loan Association mortgage, $200 allowed for compensation to administratrix and her attorney's fees, $169.25 interest from May 1, 1899, to June 5, 1899, and $72.50 five per cent attorneys' fees for collection), and upon payment of jury fee, the prothonotary is directed to enter judgment for said amount, $1,601.28, with interest from June 5, 1899, in favor of plaintiffs, and against defendants, non obstante veredicto.] [5]

*Errors assigned* were (1-5) portions of opinion as above, quoting them.

*John G. Johnson* and *Daniel J. Neff*, with them *A. J. Riley*, for appellants.—We are unable to see the irregularities, or omissions, or meagerness of description, or "looseness" which the court holds was sufficient to put the mortgagee on inquiry. The debts, with the names of the respective creditors and the amounts of the debts, are particularized, and there was nothing on the face of the record to show that they were not debts of the estate, or that they were not liens.

The case of Smith v. Wildman, 178 Pa. 245, is entirely different in its facts.

The application in this case was made by the proper party, and set forth the date of the death of the decedent, the existence of unpaid debts of the decedent, the insufficiency of personal estate, and the necessity of mortgaging decedent's real estate for the payment thereof; and the decree for mortgaging real estate

was an adjudication that these averments were facts, and the mortgaging of the real estate necessary.

*H. C. Madden*, of *Madden & Son*, with him *W. M. Beyer*, for appellee.—A decree of the orphans' court, directing the sale or mortgaging of real estate for the payment of debts, may be collaterally attacked; and the mortgagee is bound to examine the proceedings, and, by relation, other proceeding referred to and entering into the decree attacked, and is visited with notice of all that diligent inquiry, whether made or not, would lead to and disclose: Smith v. Wildman, 178 Pa. 245; Hilton's Appeal, 9 Atl. Repr. 434.

OPINION BY MR. JUSTICE MITCHELL, June 4, 1902:

The petition in the orphans' court averred, affirmatively and specifically, every fact necessary to support the decree authorizing the mortgage, and the decree was therefore a judicial ascertainment of the truth of such facts, on which the mortgagee was entitled to rely.

The learned judge below so held in regard to the date of decedent's death, but drew a distinction as to the debts set up in the schedule to the petition, and held that the latter exhibited such looseness or irregularities as to put the mortgagee upon inquiry as to the actual facts. This distinction is inconsistent with the other ruling and indefensible on principle. The decree was conclusive of everything involved in it and in reaching the result the orphans' court necessarily passed on the subject of the debts in the schedule, as fully as on the date of decedent's death, and determined that they were debts of the decedent, a lien on his real estate, and of the proper amount to require the mortgage petitioned for. The mortgagee was not bound to examine for himself and come to a different conclusion at his own risk, but was entitled to rely on the court's decree as a conclusive adjudication of all the facts, so far as concerned the validity of the title under the mortgage.

Much reliance was placed by the court below on Smith v. Wildman, 178 Pa. 245. That case went to the utmost verge in authorizing collateral attack on a decree of the orphans' court, but it falls far short of sustaining a judgment like this. In that case the petition for sale merely recited that the de-

cedent died intestate, owning real estate but not enough per-
sonalty to pay the debts.    No averment was made of the date
of death, and the only debt set forth in the record was on a
parol contract more than eleven years due.    Under these cir-
cumstances the heirs were held not to be precluded from show-
ing the actual facts.    The case came before the court again in
194 Pa. 294, and the extent of the decision was accurately
stated in the syllabus of the latter report, that where the peti-
tion shows on its face that the debt is on a parol contract
eleven years old, the court has no authority to grant an order
of sale without an averment and proof that the debt is still
existing and in lawful condition for enforcement at the time
when the petition is presented.    The difference between that
case and this is clearly shown by a quotation from the opinion
of WILLIAMS, J., in the first case (178 Pa. 253) : "The court
should be satisfied before making an order for the sale of real
estate that there are unpaid debts properly chargeable upon
the real estate of the decedent; that the real estate described
in the petition is bound by the lien of the said debts ; and that
it is necessary to have recourse to the land to enable the ad-
ministrator or executor to pay them.    The most convenient
way for presenting these facts to the court is to embody them
in the petition, stating the date of the decedent's death, and
whether the debts were at that time secured by mortgage or
judgment."    Every step in the practice here pointed out as
correct was exactly followed in the present case.

There is nothing in Hemphill v. Pry, 183 Pa. 593, at va-
riance with the views here expressed.    There the decree was
founded partly on the assent of an infant without a guardian,
and the defect of jurisdiction as to his interest was patent on
the record.

It is of common knowledge and has long been a subject of
judicial regret that sheriff's sales pass uncertain titles, and prop-
erty suffers in price accordingly.    But it is the settled policy,
founded on the highest interests of all concerned, that titles
under sales and mortgages by order of the orphans' court shall
be secured beyond question, and the courts have been vigilant
to secure and preserve this result.    Occasional hardship from
false statements or improvident decrees has been inevitable, and
sometimes has led to decisions like that in Smith v. Wildman,

belonging to the class which are said to make bad law.　But in general the security of titles based on regular adjudications of the courts having jurisdiction of the subject, has been steadfastly maintained in the highest interests of public policy.　The real hardship, fortunately only occasional, arises from a serious defect in the act of 1834, the failure to require notice to heirs and devisees before sale or mortgage which may affect their estates or interests.　Careful judges in practice require such notice now, but it should be made mandatory by statute.

Judgment reversed and judgment directed to be entered on the verdict.