## Good v. Updegraff et al.

58

*Robert L. Myers* and *Myers & Myers*, for plaintiff.
*Russell B. Updegraff*, for defendants.

SHUGHART, P. J., September 16, 1948.—This matter comes before the court as a case stated. From the pleadings filed in the case, it appears that Susan E. Deckman died intestate August 14, 1944, seized in fee simple of certain real estate situate in the Borough of New Cumberland, Cumberland County, Pa., which is the subject matter of this action. At the time of her death she was survived by a number of collateral heirs, one of whom was her brother, Joseph Packer, who was entitled to a one-sixth share of her estate. On July 18, 1947, Benjamin Packer, a brother of decedent and also of the said Joseph Packer, presented his petition to the Orphans' Court of Cumberland County requesting the said court to appoint a trustee durante absentia for the estate of the said Joseph Packer under the Fiduciaries Act of June 7, 1917, P. L. 447, as amended June 3, 1943, P. L. 839, 20 PS §1090 et seq., alleging in his petition that the said Joseph Packer was last heard from during the year 1916. A date was fixed for hearing on the petition and a hearing held on August 12, 1947. After the taking of testimony the court entered the following decree:

"And now, August 12th, 1947 upon consideration of the foregoing petition and after hearing thereon, the court being satisfied that the facts alleged in said petition have been established by competent proof and that Joseph Packer is in fact a missing person

within the meaning of the act of the assembly and that the said Joseph Packer has no one in Cumberland County, Pennsylvania, to take charge of his estate; it is hereby ordered and decreed that Cumberland County National Bank and Trust Company be appointed trustee durante absentia of the estate of the said Joseph Packer. Bond, without surety, in the sum of Five Thousand ($5,000.00) Dollars, approved by this court, shall be filed by said trustee."

Following the entry of the decree above set forth, the trustee appointed in the said decree presented its petition in the Orphans' Court of Cumberland County asking for leave to join in the sale of the real estate of the said Susan E. Deckman, deceased, at public sale and on October 28th an order was made authorizing the trustee to join with the other heirs of the said Susan E. Deckman, deceased, to expose the real estate at public sale and to make a report to the court for approval and confirmation. The property was exposed at public sale and at that time was sold to plaintiff in this action, Chester A. Good, for the sum of $19,000. A return of the said sale was made to the orphans' court and on December 23rd the return of the sale was confirmed absolutely and the trustee durante absentia was authorized on receipt of its share of the purchase money less expenses to execute and deliver a deed in fee simple to plaintiff for the real estate described in the said petition.

Following the confirmation of the sale, plaintiff on April 1, 1948, notified defendants of his rejection of the title offered and requested the repayment to him of the $1,900 hand money paid by plaintiff at the time of the public sale, alleging that the Orphans' Court of Cumberland County had no jurisdiction to appoint a trustee durante absentia for Joseph Packer or to order a sale of his interest in the real estate in question and that, therefore, defendants were unable to convey

to him a good and marketable title to the premises in question.

The matter comes before the court for determination as to whether plaintiff is entitled to a return of his hand money on the one hand or if he shall be compelled to pay the balance of the purchase price in exchange for a deed to the premises in fee simple.

The testimony produced at the hearing on the petition for the appointment of the trustee in brief showed that Joseph Packer, the alleged missing person, had originally lived in New Cumberland, Cumberland County, but had removed from this county many years ago. It appears that he last was seen by his brother, petitioner, in 1908 when he returned to New Cumberland at the time of his mother's death. At that time he was living in Chicago, Ill. It further appears that he wrote to petitioner in reply to a letter in 1916, at which time he was living in Gary, Ind. Since 1916 he has not been heard from by petitioner or any other members of his family.

The Fiduciaries Act of 1917, as amended June 3, 1943, P. L. 839, 20 PS §1090 et seq., provides for the appointment of trustees durante absentia. The first section of the Act of 1943 defines a missing person in part as follows:

"Any person having property within this Commonwealth who has absented himself or herself, or who hereafter shall absent himself or herself from his or her usual place of abode and shall have been unheard of by the immediate members of his or her family for a period of at least one year, . . ."

This same section further provides in part as follows:

"Whenever any person who has been a resident either of this Commonwealth or of any other State, Territory, or possession of the United States, or of any foreign country is missing within the meaning

of this Act, it shall be lawful for . . . next of kin . . . to file a petition under oath, with the Orphans' Court of the county in which shall be found all or the greater portion of the estate. . . ."

Plaintiff's counsel contend that under the above facts the Orphans' Court of Cumberland County did not have jurisdiction to appoint a trustee durante absentia under the statute referred to above. Plaintiff contends that the record does not disclose Joseph Packer to be a "missing person" as defined by the act, because it does not show that he had absented himself from "his usual place of abode". Counsel argues that from the evidence it appears that Packer's usual place of abode was not New Cumberland, but Gary, Ind., which was his residence when last heard from in 1916 and that there was no evidence to show that he was absent from that place.

In this proceeding plaintiff seeks to collaterally attack a decree of the orphans' court in a proceedings instituted in the court of common pleas. It is a well-recognized general rule that a decree of the orphans' court rendered in a matter over which it had jurisdiction cannot be impeached collaterally: McPherson v. Cunliff, 11 S. & R. 422; Painter v. Henderson, 7 Pa. 48; Lockhart v. John, 7 Pa. 137. This rule was embodied first in the Act of March 29, 1832, P. L. 190, and reënacted substantially in the Orphans' Court Act of June 7, 1917, P. L. 363, sec. 2, 20 PS §2085. This section provides substantially as follows:

"Its proceedings and decrees in all matters within its jurisdiction shall not be reversed or avoided collaterally in any other court. . . ."

It therefore becomes necessary to determine if the Orphans' Court of Cumbrland County had jurisdiction to enter the decree appointing a trustee durante absentia for Joseph Packer.

The case of Painter v. Henderson, 7 Pa. 48, was a case involving a proceeding for an inquest for a partition of an intestate's real estate under the provisions of the Orphans' Court Act of March 29, 1832, P. L. 190. In the proceedings the real estate was assigned to the widow at a valuation. Such a decree was unauthorized under the statute which allowed an assignment to heirs only. In that case it was contended that the decree awarding the property to the widow was void for want of jurisdiction and not merely voidable and therefore could be attacked in an action in the court of common pleas. The court held that the decree was voidable only and therefore could not be collaterally attacked. Having referred to the section of the Act of March 29, 1832, preventing a collateral attack upon decrees of the orphans' court within its jurisdiction, the court said in part (p. 52):

"Is this a matter within the jurisdiction of the Orphans' Court, according to the true import of these terms? We think that it is. Up to the time of making the decree, it cannot be doubted the proceedings were in that court. It was the case of an inquest for a partition of an intestate's real estate, under the express provisions of the Act of the 29th of March, 1832. Can it be that the sentence can oust the jurisdiction of a court? This is the argument of the defendant's counsel, but this would confound an error of the court with their jurisdiction over the subject matter. . . . The Act plainly points out the remedy for the party aggrieved, viz: by appeal to the Supreme Court. The injustice which necessarily results from treating the error of a court as void, instead of voidable, is so great, that it should be avoided if possible."

In the case of Cierlinski v. Rys, 225 Pa. 312, a year and a half after the death of one Cierlinski a woman who had been his wife filed her petition in the orphans' court alleging that she was his widow, but

set out the fact of her second marriage and asked that certain property including a lot in the City of Erie be set aside to her as her exemption. Appraisers were appointed and the appraisement and award were confirmed and the proceedings in the orphans' court concluded. The lot was subsequently sold to defendants. Five years later the guardian of Cierlinksi's minor child brought an action in ejectment against defendants alleging that the award to the widow was void because her right to the award was lost by her remarriage. Verdict was first entered for plaintiff and subsequently judgment entered for defendants non obstante veredicto on the ground that the orphans' court had exclusive jurisdiction in the first instance to decide if the widow's claim should be allowed, notwithstanding her remarriage, and its decision could only be reviewed on appeal, and even if erroneous, could not be attacked in a collateral proceeding and was binding on the common pleas. The Supreme Court affirmed and after stating the general rule went on to say:

"No want of jurisdiction appeared on the face of the record. The petitioner averred that she was the widow of the decedent and as such was entitled to the property claimed. This averment made it the duty of the Orphans' Court to take cognizance of and to decide her cause, and it was the only court that could hear and determine it. Although she set out a fact that raised a doubt as to the validity of her claim, she was nevertheless entitled to be heard. A finding *as to that fact by a court having jurisdiction of the subject matter, however erroneous, was conclusive in a collateral proceeding.*" (Italics supplied.)

In the case of Commonwealth ex rel. Howard v. Howard, 138 Pa. Superior Ct. 505, the Municipal Court of Philadelphia erroneously entered an order remitting certain arrearages under an order of support for a wife in violation of the decision of Commonwealth

ex rel. Martin v. Martin, 134 Pa. Superior Ct. 345. Eighteen months after the entry of the order petitioner asked the court to vacate its order and upon its refusal appealed to the Superior Court. Petitioner contended that the Martin case having held that the Municipal Court did not have the power to remit arrearages in cases of desertion and nonsupport the order of court was null and void for lack of jurisdiction of the court and therefore subject to attack at any time. The appellate court sustained the court below and stated:

"When we stated, in the Martin case that the court lacked the power to remit arrearages, we meant to say nothing more than that an order so directing was legally erroneous. A failure to appeal from such order rendered the matter res judicata under the authorities heretofore cited."

The court distinguished other cases where there was an absence of jurisdiction over the subject matter, e. g., where a default judgment was entered for a claim exceeding $2,850 when $2,500 was the limit of the jurisdiction of the court which rendered the judgment (Baker v. Carter, 103 Pa. Superior Ct. 344); and where the court of quarter sessions resentenced a criminal by adding further penalty after the term had ended: Moskowitz Registration Case, 329 Pa. 183. The court concluded that the case was one where the Municipal Court did have jurisdiction of the subject matter but improperly applied the law in disposing of the matter, and, hence, the only remedy for such error was by appeal.

In the case of Wesner's Estate, 139 Pa. Superior Ct. 314, the facts were that George Wesner killed his brother on March 18, 1929, and immediately fled; after that time he was a fugitive from justice and his whereabouts unknown. On May 3, 1937, another brother petitioned the court under the Fiduciaries Act to have

the fugitive declared a presumed decedent. After notice and hearing the court entered an interlocutory decree June 14, 1937, declaring "that the legal presumption of the death of George Wesner is made out and established as of March 18, 1936". On October 25, 1937, no evidence of the continuance of life having been produced, the preliminary decree was made absolute and letters of administration on the estate of presumed decedent were issued. No appeal was taken from the decree.

The administrator then brought suit on two life insurance policies issued on the life of George Wesner. Thereupon the insurance company petitioned the lower court to vacate the final decree and the granting of letters. After hearing the petition was dismissed and the insurance company appealed. The action of the insurance company was not founded on the contention that George Wesner was in fact living but upon the contention that he at all times had been a fugitive from justice and his disappearance, therefore, was not an unexplained absence. It attempted to set aside the final judgment declaring Wesner a presumed decedent on the sole ground that the evidence was insufficient to support the decree. This, the court held, could not be done. The court said that the purpose of the Fiduciaries Act was not to determine whether the person is in fact dead or alive, *but to set up a conservator for his property within the State if the facts raise a legal presumption of death.* (Italics supplied.) The conservation of the property and not distribution of the estate was the primary purpose of the act. The proceeding therefore was in rem and not in personam. Citing Cunnius v. Reading School District, 206 Pa. 469.

We feel that the foregoing statements relative to the nature of the proceedings in relation to presumed decedents are equally applicable to missing persons,

the purpose of the act being to conserve the property if the facts indicate the person to be missing.

The court recognized that the insurance company there, just as defendant in the instant case, was not entitled to intervene in the original proceedings but held the important factor to be that no appeal was taken from the final decree within the statutory period and further the petition could not be treated as an appeal. Finally the court stated:

"The entry of the decree declaring Wesner a presumed decedent and appointing an administrator of his estate was a judicial act by a competent tribunal having jurisdiction of the subject matter and that decree is valid until revoked in the manner prescribed by the statute.

"Since the final decree of the Orphans' Court, entered in a matter properly within its jurisdiction, was a judgment in rem, it is binding upon the whole world irrespective of whether the persons affected were parties or were entitled to be made parties to the litigation in which the decree was entered." Citing cases.

From the cases cited above we feel it is clear that in the instant case the orphans' court had jurisdiction over the subject matter of the action, the appointing of trustees for missing persons. Its decree, therefore, was a judicial act by a competent tribunal having jurisdiction of the subject matter and hence is not subject to collateral attack in an action in the court of common pleas. We feel that the facts of the Wesner case cited above are so similar to those in the instant case as to be controlling. It will be noted that in that case the attack was made in the same court in a direct proceeding whereas in the instant case the attack is a collateral attack in the common pleas.

Aside from the prohibition against collateral attack on the decree, we are of the opinion that inferences could be drawn from the testimony produced here

which amply support the decree appointing the trustee durante absentia, so that there were not present the errors of law which the courts in the cases above cited have held could not be attacked in a collateral proceeding.

We feel that the cases cited by plaintiff in support of his contention are not controlling in the instant case. In the case of Baum's Estate, 260 Pa. 33, a will was admitted to probate bearing date August 2, 1911. It appeared that testator had a son born January 15, 1912, which fact operated greatly to the disadvantage of the widow who was named sole heir and executrix. Upon petition by the widow to the orphans' court a decree was entered revoking the probate of the will as of August 2, 1911, and admitted to probate of the same will as of the date August 3, 1912. The court held that the orphans' court had no jurisdiction anywhere in the law to entertain such a petition and therefore its decree was void.

In Smith v. Ribblett, 233 Pa. 300, an orphans' court sale for payment of debts was invalidated because no valid debts existed to give the court jurisdiction over the subject matter.

In the case of Smith v. Wildman, 178 Pa. 245, cited by plaintiff, an orphans' court sale for the payment of debts was invalidated when the lien of the debts had expired at the time of the application to the court. In that case three judges concurred in a dissenting opinion. The same case came before the court again in 194 Pa. 294 and therein was restricted to its own facts, namely, that "where a petition to the Orphans' Court for an order to sell real estate shows on its face that the debt was on a parol contract eleven years old, the court has no authority to grant the order without an averment, followed by proof, that the debt was still existing in a lawful condition for enforcement at the time when the petition was presented". See Grubb v.

Galloway, 203 Pa. 236. In that case Justice Mitchell said: "Occasional hardship from false statements or improvident decrees has been inevitable, and sometimes has led to decisions like that in Smith v. Wildman, belonging to the class which are said to make bad law."

Other cases cited by plaintiff are likewise cases where the court held that the lower court had no jurisdiction over the subject matter or over the person sought to be bound by the decree.

The second contention of plaintiff's counsel is that even if the appointment of the trustee were valid the court in ordering the sale of Joseph Packer's interest exceeded its jurisdiction. First, because the petition for the sale recited the Revised Price Act as authority for the sale which provides for sale of real estate of a presumed decedent rather than the missing person's statute. We feel that inadvertence of counsel in referring to an improper statute as authority will not invalidate a sale where such sale is proper under another statute.

Secondly, counsel argue that under the missing person's statute there can be a sale (20 PS §1092.1) only where there was an averment that such sale is necessary for the best interest of his estate. Suffice it to say that the petition averred Packer's fractional interest in the real estate and the fact that the other heirs had executed a power of attorney with a view to exposing the property at public sale. We feel that the facts were ample from which the court could find that "the best interest and advantage" of the estate required the sale and having so found, as shown by the decree authorizing the sale, under the authorities already cited it cannot now be attacked.

And now, September 16, 1948, for the reasons given in the foregoing opinion, judgment is entered in favor of defendants.